**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---------------------------------------------------------------x

| | |
|---|---|
| ARISTA. RECORDS LLC, et al., | Civil Action No. 1:04-cv-12434-NG |
| | (Consolidated Docket No.) |
| Plaintiffs, | |
| | Civil Action No. 1:07-cv-10834- NG |
| -v.- | (Original Docket No.) |
| DOES 1-21, | |
| Defendants. | |

---------------------------------------------------------------x

# REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO QUASH SUBPOENA

## PRELIMINARY STATEMENT

Doe, by its attorneys, moved for an order quashing the subpoena issued by this U.S. District Court on the ground that the Order Re: Expedited Discovery dated May 9, 2007 was issued by the Court based on a flawed "Ex Parte Application for Leave to Take Immediate Discovery."

Plaintiffs filed an Opposition to the Motion to Quash on June 27, 2007 on the following grounds:

A. The particular Doe filing the motion has not identified himself, causing plaintiffs to be confused.

B. The fact that plaintiffs have failed to make a prima facie showing of copyright infringement is not a proper basis on which to quash the subpoena.

C. Other courts have "agreed in similar cases that plaintiffs' complaint is more than sufficient to state a prima facie claim for copyright infringement."

–1–

D.  The mere storage of licensed sound files on a Doe's computer while connected to a network through which, even if without the Doe's knowledge or consent, other [non-Doe] computers can detect the file names and can copy the sound files without license is copyright infringement by the Doe even if none of the files was actually copied (on the ground that the Doe has "offered" the files to non-Does and has thus "disseminated" them without license).

E. "Most courts apply a flexible good cause standard in deciding whether to grant orders for expedited discovery in circumstances like those presented here. * * * [and] this court has already found * * * Plaintiffs request for expedited discovery is reasonable under the good cause standard, in light of the allegations in Plaintiffs' Complaint, the harm to Plaintiffs of having Defendant infringe hundreds of Plaintiffs' copyrighted works," etc.

## ARGUMENT

### I.  REPLY TO PLAINTIFFS' GROUNDS A THROUGH E

#### A.  THE MOVING DOE PARTY IS UNDER NO OBLIGATION TO IDENTIFY HIMSELF

The subpoena was served on Boston University ("B.U.") pursuant to this court's order of May 9, 2007, along with a list of 21 internet protocol ("IP") addresses commanding B.U. to identify users of the IP addresses ("Does").  The court directed non-party B.U. to provide each Doe with a copy of the court-directed notice attached to the court's order.  The court-directed notice (an excerpt attached hereto as Exhibit A) indicated that the recipient had 14 days to file a motion to quash the subpoena; otherwise their name would be revealed.  B.U. was not directed to inform the recipients of the court-directed notice what Doe number they were and B.U. did not do so.  B.U.'s letter (an excerpt attached as Exhibit B) stated that B.U.'s records indicated the recipient was using **one or more** of the 21 IP addresses.  Therefore since the individual filing the

motion had no way of knowing whether he was being accused of having one, two, three, or all 21 of the IP addresses, filed his motion as Does 1-21. If B.U.'s letter indicated which particular Doe numbers the recipient was accused of being, then the moving party would have so indicated in his motion to quash and vacate. Plaintiffs have cited no legal basis for their contention that the individual was obligated to ask B.U. which Doe or Does he was accused of being.

The motion to quash and vacate was not filed so that only one Doe's name not be revealed by B.U.; rather, it was filed because the order granting expedited discovery was based on false premises and therefore should be vacated in its entirety. There was only one subpoena, not 21.

### B. THE FACT THAT THE PRIMA FACIE CASE OF COPYRIGHT INFRINGEMENT BY THE DOES WAS PATENTLY FALSE IS A BASIS TO QUASH THE SUBPOENA AND VACATE THE ORDER

Plaintiffs pleaded for the court's grant of expedited discovery based on a faulty prima facie showing of copyright infringement on the part of defendant Does.

Plaintiffs submitted a declaration of Carlos Linares which stated under penalty of perjury under federal law that the Does had illegal sound files on their computers. Mr. Linares stated that plaintiffs' agent, MediaSentry, downloaded sound files from the defendant Does and determined them to be illegal by listening to them.

According to the declarations of Dr. Azer Bestavros and Jesse Robert Stengel, submitted with the instant Reply, one can not determine from listening to a music file that it is illegal. An unlicensed digital copy of a licensed sound file will sound precisely the same as the original. Dr. Bestavros is a leading, distinguished computer scientist, professor, and Chairman of the B.U. Computer Sciences Department. Mr. Stengel is a network support systems analyst at the University of Arizona and a musician educated in sound theory. Neither Dr. Bestavros nor Mr.

Stengel have been compensated for their declarations or has a financial interest in the outcome of this matter. Mr. Linares is employed by an association of which the plaintiffs are members.

The Linares declaration that MediaSentry determined the files downloaded from certain IP addresses were illegal by listening can not be true.

Mr. Linares also declared that an IP address coupled with a time stamp can uniquely identify a computer or a user. Mr. Stengel explains in his declaration why Linares' statement is incorrect:

> "… because an IP address, even coupled with a time stamp, cannot uniquely identify a computer or a user. The reason is an extremely prevalent technology called Network Address Translation, or NAT. NAT translates one or more public, routable IP addresses in to one or more private, non-routable (as per IETF RFC 1918) addresses. This allows a large number (potentially as many as 16 million) computers to operate through a single IP address. There is no way to tell what is behind a NAT, or indeed if one is in place…"

Stengel Declaration, ¶5.

Since the Linares declaration submitted in support of plaintiffs' *ex parte* application for expedited discovery, is materially false, the grant of expedited discovery based on it should be vacated. Expedited discovery should also be vacated in every other civil action where a similar record company declaration was relied upon by this court.

Now plaintiffs argue that whether or not they made a prima facie showing of copyright infringement is irrelevant to whether the subpoena should be quashed. (Opposition, page 3, second paragraph.) Does disagree. Whether copyright infringement was shown was and is crucial. Certainly this court would not have ordered expedited discovery without a prima facie showing of copyright infringement.

### C. WHAT OTHER COURTS HAVE CONCLUDED TO BE A PRIMA FACIE CASE OF COPYRIGHT INFRINGEMENT IS IRRELEVANT

Plaintiffs point to many district courts in other jurisdictions which have granted motions for leave to take expedited discovery in John Doe lawsuits. None of the cited decisions is controlling precedent in the instant action and none, as far as defendant is aware, was a decision denying a motion to quash a subpoena issued on a showing alleging prima facie copyright infringement. Plaintiffs have not demonstrated or alleged a single act of copyright infringement on the part of any of Does 1-21. Plaintiffs based the present action on a faulty theory that a Doe's failure to prevent access to his computer to prevent copying of sound files stored therein is a "dissemination" or "distribution" and therefore copyright infringement.

This court is being asked to reconsider its finding that a prima facie case of copyright infringement was made out and, if not made out, to reconsider its decision to allow expedited discovery of defendants' names.

### D. THE MERE STORAGE OF LICENSED SOUND FILES ON A STUDENT'S COMPUTER WHILE CONNECTED TO A NETWORK THROUGH WHICH OTHER COMPUTERS CAN DETECT THE FILE NAMES AND CAN COPY THE SOUND FILES WITHOUT LICENSE IS **NOT** COPYRIGHT INFRINGEMENT

No valid prima facie evidence was presented by plaintiffs that any Doe had illegal files or was "offering" any illegal file. What the Does were doing was perfectly legal. The defendants were not accused of accessing and copying without license sound files on other computers. They were only accused of having the files in a place on their computers where others could potentially make unlicensed copies; and not protecting their computers from being accessed. There is no precedent for finding defendants' accused activities to be copyright infringement.

Even if plaintiffs were able to cite a decision from a sister district court holding what defendants are accused of doing to be copyright infringement, such decision is not controlling and should not be followed in this case where it is so clear that defendants have not been shown to copy any file without license and have not been shown to (a) know that others have copied any specific file from their computers, (b) encourage others to copy any specific file from their computers, (c) be aware that others can copy files from their computers, or (d) to have assisted others in copying sound files from their computers.

If plaintiffs' "making available for copying" theory of copyright infringement is correct, then anyone who has licensed sound files stored on his computer who does not secure the computer to prevent others from accessing and copying his sound files when he goes to lunch is a copyright infringer – even if no one makes any copies.

In defendants' Memorandum in support of their motion to quash, Doe pointed out: (1) Plaintiffs have not alleged that the individual users <u>invited</u> anyone to copy their music files; (2) Plaintiffs have not alleged that the individual users were <u>aware</u> that anyone copied any of their music files; (3) Plaintiffs have not alleged that the individual users were even aware that their music files <u>could be</u> copied by third parties such as plaintiffs' agents; and (4) Plaintiffs have not alleged a <u>duty</u> for individual users to protect their music files from copying by third parties over the internet.  <u>Plaintiffs have not responded to these points, which must be taken as an admission.</u>

## II. WHY PLAINTIFFS WANT DOES 1-21 IDENTIFICATION FROM B.U.

The real reason plaintiffs are so desperate to obtain defendants individual names is so that they can continue their pattern of extortion.

The extortion scheme is based on threats and innuendoes, the cost of a single student defending a suit against deep pocketed plaintiffs, the alleged liability of thousand dollars per

song allegedly "offered" on a student's computer, and the traditional "three thousand to five thousand dollar settlement offer if you settle right now." See http://recordingindustryvspeople.blogspot.com/search?q=harvard, an excerpt from which is attached as Exhibit C. Plaintiffs virtually admitted their intimidation pattern in their Opposition when they said:

> Mr. Sayeg may have moved to quash the subpoena on behalf of a number of Doe defendants who may not have consented to the Motion. Those defendants who have contacted Plaintiffs' counsel to discuss settlement, either directly or through counsel, *may wish to take advantage of settlement terms that are more favorable this early in the litigation than may be available after the motion to quash has been litigated and this case progresses*. By moving to quash the subpoena purportedly on behalf of those defendants without their consent, Mr. Sayeg is taking that decision out of their hands and possibly harming their best interests.

## CONCLUSION

Plaintiffs have not established a prima facie case of copyright infringement by any of the Does. Plaintiffs presented a materially false and misleading declaration in support of their Ex Parte Motion for Expedited Discovery. Expedited discovery should not have been ordered. The Court should not countenance this injustice and abuse of the judicial system. Doe respectfully requests that this Court vacate its May 9, 2007 *Ex Parte* Order Re: Expedited Discovery and quash the subpoena issued pursuant to said Order. Does also respectfully suggest that this Court consider sanctions against plaintiffs in each of the cases consolidated under the 1:04-cv-12434-NG caption, including ordering plaintiffs to refund any settlement amounts received from any Doe and awarding reasonable attorneys fees to Does.

Respectfully submitted,

JOHN DOE 1
By its Attorneys


/s/ Raymond Sayeg_____
Raymond Sayeg, BBO #555437
DENNER PELLEGRINO, LLP
Four Longfellow Place, 35th Floor
Boston, Massachusetts  02114
(617 ) 742-1184

Dated:  July  13, 2007

CERTIFICATE OF SERVICE

 I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 13th day of July, 2007.

 John R. Bauer
 Nancy M. Cremins
 Robinson & Cole LLP
 One Boston Place
 Boston, MA 02108-4404


               _/s/ Raymond Sayeg_
               Denner Pellegrino LLP

:

## EXHIBIT A

**YOUR NAME HAS NOT YET BEEN DISCLOSED.**
**YOUR NAME WILL BE DISCLOSED IN 14 DAYS IF YOU DO NOT**
**CHALLENGE THE SUBPOENA**

Your name has not yet been disclosed. The record companies have given the Court enough information about your alleged infringement to obtain a subpoena to identify you, but the Court has not yet decided whether you are liable for infringement. You can challenge the subpoena in Court. You have 14 days from the date that you received this notice to file a motion to quash or vacate the subpoena. If you file a motion to quash the subpoena, your identity will not be disclosed until the motion is resolved (and the companies cannot proceed against you until you are identified). The second page of this notice can assist you in locating an attorney, and lists other resources to help you determine how to respond to the subpoena. If you do not file a motion to quash, at the end of the 14 day period, your ISP will send the record company plaintiffs your identification information.

**EXHIBIT B**

The University has been served with a subpoena in the above-referenced matter seeking identifying information for users identified by the IP addresses on Attachment A. A copy of that subpoena and the Court-Directed Notice Regarding Issuance of Subpoena are enclosed for your reference.

Our records indicate that you are the user of one or more of those IP addresses. It is the policy of the University, in compliance with both state and federal law and in the absence of a court order to the contrary, to respond to legitimate subpoena requests. We intend to comply with this subpoena on June 15, 2007 by providing the information requested. If you wish to object to the release of your information, you or your attorney must file a motion to that effect in the Court from which the subpoena was issued. Please send a copy of any such motion to this Office.

## EXHIBIT C

After getting the name and address of the person who paid for the internet access account, they then send him or her a letter demanding a "settlement".

Their settlement is usually for $3750, non-negotiable, and contains numerous one-sided and unusual provisions, such as a representation that peer to peer file sharing of copyrighted music is a copyright infringement (a representation that is far too broad, undoubtedly there are 'sharing' behaviors with digital files, as there are with cd's, that are not copyright infringements). Even certain innocuous provisions, worded in a way to make them obligations of the defendant but not the RIAA, are deemed 'non-negotiable'. At bottom, the settlement is cold comfort to the defendant, because it does not speak for the other potential plaintiffs -- the owners of the copyrighted work, or the other record companies not represented by the RIAA litigation fund. That this omission is significant is illustrated by the new wave of copyright enforcement actions by music publishers against guitar tablature sites. There is nothing to prevent them from suing the individuals who have settled with the RIAA over the sound recording rights.

The newest wrinkle in the RIAA's pre-litigation settlement strategy is to encourage "early settlements" prior to commencement of a litigation. The RIAA has even set up a web site where people can go to make these settlements. The RIAA has stated that the settlements will be for a $1000 or more less than otherwise. However the first such settlement we have heard of is for $3500, which is only $250 less. We have heard of $3000 settlements being "offered" to college students. The RIAA has opened this initiative on two fronts, (1) the ISP's, and (2) colleges and universities. Some colleges have cooperated, forwarding the RIAA letters to the students, some have not. It remains to be seen how the ISP's will react.