UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------x
                                        )

ARISTA. RECORDS LLC, et al.,         )

                                          )

Plaintiffs,                       )     Civil Action No.
                                          )     1:04 cv 12434-NG

                                          )

                -v.-                  )

                                          )

DOES 1-21,                      )

                                          )

                         Defendants.    )

                                          )
-------------------------------------------------------------x

**SUPPLEMENTAL MEMORANDUM OF LAW OF BOSTON UNIVERSITY DOE
IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA**

**<u>PRELIMINARY STATEMENT</u>**

       Doe, by its attorneys, respectfully submits this Supplemental Memorandum of Law,

requested by the Court at the hearing on January 28, 2008, in support of its motion to quash the

subpoena issued by this Court commanding Boston University ("BU") to provide names of its

students whose computers were assigned internet protocol addresses at certain times.

       During the hearing, the Court requested authority against plaintiffs' position that

intentionally storing a legal, i.e., licensed, music file at a location on a computer such as a

"share" folder connected to the Internet where plaintiffs' agent, MediaSentry, was able to find it

and download it, is an infringement of the copyright owner's exclusive distribution right under

17 U.S.C. § 106(3) "to distribute copies or phonorecords of the copyrighted work to the public

by sale or other transfer of ownership, or by rental, lease, or lending."

Judge Gertner commented to the effect that there is a crucial difference between a student putting a file in a "share" folder where others can find it, listen to it, and download it from the student's computer, and putting the file in another location on the student's computer[1], and that the fact that MediaSentry was able to download the file from the student is enough to prove the student put the file in the "share" folder and "made it available" for others to download, an infringement of the distribution right set forth in 17 U.S.C. § 106(3).

The Court also asked for any analysis by commentators as to whether such "making available" of a legal file in a P2P shared folder on a computer, without any illegal copies having been made[2] is an infringement of the distribution right.

A.    NO EVIDENCE WAS PRESENTED THAT ANY OF THE BU STUDENT DOES INTENTIONALLY PUT MUSIC FILES IN A SHARE FOLDER, NOR SHOULD INTENT BE INFERRED

The RIAA itself commented before the Federal Trade Commission on November 15, 2004 as follows:

"P2P services often configure their software to share content by default. What users do not know is that they may be sharing their tax returns, financial records, health records, business records, email, and other personal and private material[3]. * * * P2P software may, upon installation, automatically search a users *entire* hard drive for content. Continuing sharing of personal information is hard to avoid and is facilitated by confusing and complicated instructions for designating shared

---

[1] Judge Gertner said she could put a file on her own computer in a place where it would not be available even if using P2P software.

[2] MediaSentry's copying was authorized by plaintiffs

[3] and, of course, legal music files

items.  A study by * * * HP Laboratories showed that the "majority of users . . .
were unable to tell what files they were sharing, and sometimes incorrectly
assumed they were not sharing any files when in fact they were sharing all files
on their hard drives.  Peer-to-Peer File-Sharing Technology: Consumer Protection
and Competition Issues, P2P File-Sharing Workshop [Federal Trade Commission]
– Comment, P034517, pp. 8-9.

The RIAA is managing the current series of P2P sharing lawsuits and so its comments
that the majority of users are sharing files unintentionally should rebut the court's presumption
that the students of Boston University intentionally placed the files in a special "shared" location.
According to the RIAA's official submission to a government agency, it is more likely that the
students did not even know their files could be copied by others.

Whether or not the B.U. students intentionally made their files available to others to see
and download is crucial to plaintiffs' "making available" theory of copyright infringement.  If
plaintiffs failed to present credible evidence of such explicit intent, they should not be permitted
to get the students names so that they can extort $3000 to $5000 each student, their customary
settlement amount.[4]

---

[4] See online article entitled Pay Up, Binghampton University advises RIAA victim,
*http://www.p2pnet.net/story/14799*

*Here's an interesting study in contrasts:*

In Maine, Hannah Ames and Lisa Chmelecki from the University of Maine School of Law's
Cumberland Legal Aid Clinic are going flat out to officially represent two students who are
being victimized by Warner Music, EMI, Vivendi Universal and Sony BMG's RIAA through a
'pre-settlement' extortion scheme by which they were given the options of paying the RIAA
$3,000, or more, or risk a possible civil court case.

**B.**        **"MAKING AVAILABLE" WITHOUT PROOF OF ACTUAL DISTRIBUTION OF UNLICENSED FILES IS NOT AN INFRINGEMENT UNDER 17 U.S.C. 106(3).**

The Court requested decisions and scholarly authorities as to whether an actual

distribution of material objects is necessary for plaintiffs' case. All of the decisions and

---

Ames and Chmelecki are being guided by clinic director and U of M associate professor Deirdre Smith.

Maine said, We'll Help, but the legal clinic at New York's Binghamton University categorically advised Nicole Russo, a BU senior, to pay up because, "it costs $400 an hour to retain an RIAA attorney to take the case to court," says the Pipe Dream, going on.

"I feel like they came in and robbed me blind," story has Russo saying.

"I had no chance at winning this case because the RIAA has unlimited funds to go to court where I do not. They target students for this reason, the RIAA knows students won't fight it further and would prefer to make it go away quietly."

Adds the Pipe Dream.

Due to the severity of the issue, BU continues to educate students on the possible consequences of file sharing.

"Our educational program continues, which includes distributing informational brochures to new and returning students. In addition, an ad was run in Pipe Dream last semester and we're looking into doing the same this semester," said Gail Glover, a BU spokeswoman.

Russo, who has decided to accept the settlement price, is an Educational Opportunity Program student and attends BU through grants and loans. She says she has no way to pay off the settlement.

"What makes me really angry is the $4,000 collected from me doesn't go to the artist at all, it just gets recirculated to sue en masse more people like me," she said.

In Oregon, State Attorney General Hardy Myers has come out firmly on the side of the University of Oregon, telling the Big 4 to either put up or shut up.

Today, something like 5,000 students have been threatened in this way but as far as we know, not one of them has yet seen a judge or a jury.

authorities are in agreement that it is.  Among the more recent authorities is *Latin Amer. Music Co. v. Archdiocese of San Juan*, 499 F.3d 32, 46 (1st Cir. 2007) stating

> Mere authorization of an infringing act is an insufficient basis for copyright infringement.   Infringement depends on whether an infringing act, such as copying or performing, has occurred. Therefore, to prove infringement, a claimant must show "an infringing act after the authorization."

It was only when songs listed in a catalog were also distributed in a material object, a  compact disc, that the 1st Circuit found there could be infringement.  Id.  An earlier opinion, *Resnick v. Copyright Clearance Center*, 422 F. Supp .2d 252, 259 (D. Mass., 2006),  similarly held that

> a "defendant is not liable under a contributory or vicarious infringement theory of liability unless plaintiffs show direct infringement by a third party.  Plaintiffs * * * claim that they have shown direct infringement through the investigative work of Richard Hamilton, who obtained copies of plaintiffs' copyrighted work  * * * at [plaintiffs'] direction. * * * But Hamilton's activities were authorized by plaintiffs themselves.  When the person making the copies has been 'authorized by the copyright owner to use the copyrighted work,' he has not infringed. * * * Thus, Hamilton's [copying] does not constitute direct infringement by a third party."

Similarly, in the present case, except for plaintiffs' authorized copying by MediaSentry, no infringing act of actual distribution of a material object has been shown, nor could it have

been shown by the procedures followed by MediaSentry. It is entirely possible, and indeed very likely, that files on a B.U. student's computer were never copied by a third party[5].

The leading copyright commentators, Goldstein, Nimmer, and Patry, unanimously agree that "an actual transfer must take place; a mere offer for sale will not infringe the right." Paul Goldstein, 2 Goldstein on Copyright § 7.5.1 (3d Ed. 2007); Melville B. Nimmer & David Nimmer, 2 Nimmer on Copyright § 8.11[A] (2007); William F. Patry, 4 Patry on Copyright § 13:9 (2007) ("without actual distribution of copies * * * there is no violation of the distribution right.").

Professor Patry has a blog in addition to his authoritative seven volume treatise, in which he commented regarding the *Howell* case in Arizona, "well covered litigation that raises directly whether there is a making available right (or "deemed distribution") as an adjunct of the distribution right. I think not." The Patry Copyright Blog, Dec. 31, 2007, in article entitled "The Establishment Press Takes on the RIAA," URL: williampatry.blogspot.com

Since no file transfer was shown to have taken place in the present case, if the court agrees with all of the leading commentators, it would agree that there was no infringement.

The court should also come to realize that plaintiffs' "making available" theory is merely a ruse concocted to confuse courts in order to get expedited discovery of students' names from universities, *ex parte* before the students even receive a copy of the complaint filed against them,

---

[5] First, their files may have been uninteresting to others; second, many other members of the P2P networks may have had the same files "available" at the same time and so those wanting copies might have had a choice of dozens of computers from which to copy the particular file. Third, usually several instances of the same file are available over P2P networks from several sources at the same time in which case the requesting computer obtains tiny parts of each file from each of the sources rather than making a complete copy of a file from a single source, which is a P2P design feature to improve the speed of file transfers.

so that the RIAA can intimidate them into early settlements of $3000 to $5000, with no intent to

try the cases against them[6].

### C.    RELEVANT QUOTES FROM OTHER AUTHORITIES RELATED TO THE PLAINTIFFS' SCHEME

1.    *Elektra v. O'Brien*, Hon. S. James Otero, Central District of California, order of March 2, 2007:

This lawsuit is one of thousands of "peer to peer" file-sharing lawsuits which have been filed in the federal courts over the last few years. In most of these cases, as in this one, the plaintiffs are represented by counsel and the defendants are not * * *

In other lawsuits, the same Plaintiffs are currently litigating legal issues which, if determined adversely to the Plaintiffs and applied to this lawsuit, would result in this lawsuit being terminated or the damages being capped at a very low amount. In the Southern District of New York, in the case Elektra Entertainment v. v. Denise Barker, Judge Karas is considering a motion to dismiss on the basis that the pleadings in these file-sharing cases do not sufficiently allege copyright infringement. Elektra Entm't Group, Inc., etal. v. Denise Barker, No.05-7340 (S.D.N.Y. Jan. 26, 2007) (minutes stating argument held and decision reserved). In the Eastern District of New York, in the case UMG Recordings v. Marie Lindor, a case which involves two of the five Plaintiffs in the present case, Judge Trager allowed an amended answer to be filed which states the affirmative defense that the statutory damages sought substantially exceed the 10:1 ratio of awarded damages to actual damages permitted by the Supreme Court in State Farm Mut. Auto. Ins. Co. v. Campbell, 538 US. 408,425 (2003). UMG Recordings, Inc., etal. v. Marie Lindor, No. 05-1095 (E.D.N.Y. Nov. 9,2006) (order granting motion to file second amended answer).......In the Western District of Oklahoma, in the case Capitol Records, Inc, v, Debbie Foster, a case which involved four of the five Plaintiffs in the present case, Judge West awarded attorney fees to the defendant, after the plaintiffs continued to litigate even after it was shown that it had been another user of the defendant's account who had engaged in the filesharing. Capitol, Inc., et al. v. Debbie Foster, etal., No. 04-1 569 (W.D. Okla. Feb. 6,2007) (order granting attorney fees). Certainly, there are even more legal arguments being raised against the plaintiffs in these file-sharing cases. The concern of this Court is that in these lawsuits, potentially meritorious legal and factual defenses are not being litigated, and instead, the federal judiciary is being used as a hammer by a small group of plaintiffs to pound settlements out of unrepresented defendants.

In this case, the First Amended Complaint names Defendants Catherin O'Brien and Michael Tubman, whereas the original Complaint merely named Defendant O'Brien. The declaration of Jonathan G. Fetterly filed on February 20,2006 alleges that the multiple parties in this case are properly joined but says nothing specific to the facts of this case. There are no factually specific allegations that the defendants are in any way related to each other, acted in or acted as a group

---

[6.] Even if plaintiffs obtained the student's name and sued him or her, it would be impossible to prove that an unauthorized third party copied files from the student, but it would cost more than $3000 to defend the suit, giving RIAA leverage to extort a settlement.

in the offending actions. The Western District of Texas, encountering the problem that plaintiffs in file-sharing suits were naming unrelated parties in order to economize on filing fees, ordered that all but the first named defendant be dismissed from the file-sharing cases. *Fonovisa v. Does 1-41*, No. 04-550 (W.D. Tex. Nov. 17,2004)

The Plaintiffs are ordered to show cause in writing no later than March 21, 2007 as to why Defendant Michael Tubman should not be dismissed from this action. The First Amended Complaint names Defendant Michael Tubman without dismissing the case against Defendant Catherin O'Brien. It is possible that the Plaintiffs are engaging in the same tactics as they did in the Oklahoma case mentioned above. The Plaintiffs are ordered to show cause in writing no later than March 21,2007 as to why Defendant Catherin O'Brien should not be dismissed from this action.

      2.   *Arista v. Does 1-27*, D. Me, January 25, 2008 "[I]t is difficult to ignore the kind of gamesmanship that is going on here.....These plaintiffs have devised a clever scheme to obtain court-authorized discovery prior to the service of complaints, but it troubles me that they do so with impunity and at the expense of the requirements of Rule 11(b)(3) because they have no good faith evidentiary basis to believe the cases should be joined." Hon. Margaret J. Kravchuk, Magistrate Judge.

      3.   *In Re: Cases filed by Recording Companies, Order of November 17, 2004,* D. Texas, W. Dist.: "Plaintiffs are ordered to file any future cases of this nature against one defendant at a time, and may not join defendants for their convenience." Hon. Sam Sparks, Hon. Lee Yeakel, District Court Judges.

      4.   *Atlantic v. Andersen*, (D. Or., September 21, 2007) 2008 WL 185806: "Whatever plaintiffs' reasons for the manner in which they have prosecuted this case, it does not appear to be justified as a reasonable exploration of the boundaries of copyright law....."

      5.   *Capitol v. Foster*, 2007 WL 1028532: "[N]either the parties' submissions nor the Court's own research has revealed any case holding the mere owner of an internet account contributorily or vicariously liable for the infringing activities of third persons.....In addition to the weakness of the secondary copyright infringement claims against Ms. Foster, there is a question of the plaintiffs' motivations in pursuing them..... [T]here is an appearance that the plaintiffs initiated the secondary infringement claims to press Ms. Foster into settlement after they had ceased to believe she was a direct or "primary" infringer." Hon. Lee R. West, District Judge, Western District of Oklahoma, February 6, 2007.

      6.   *Interscope v. Rodriguez,* 2007 WL 2408484: "Plaintiff ... must present at least some facts to show the plausibility of their allegations of copyright infringement.... However, other than the bare conclusory statement that on "information and belief" Defendant has downloaded, distributed and/or made available for distribution to the public copyrighted works, Plaintiffs have presented no facts that would indicate that this allegation is anything more than speculation. The complaint is simply a boilerplate listing of the elements of copyright infringement without any facts pertaining specifically to the instant Defendant. The Court therefore finds that the complaint fails to sufficiently state a claim upon which relief can be

granted...." Hon. Rudi M. Brewster, Senior District Judge, Southern District of California, August 17, 2007..

      **7.**     *Interscope v. Does 1-7*, 494 F. Supp. 2d 388: "The Court is unaware of any other authority that authorizes the ex parte subpoena requested by plaintiffs." Hon. Walter D. Kelley, Jr., District Judge, Eastern District of Virginia, July 12, 2007.

      **8.**     *Capitol v. Does 1-16*, 2007 WL 1893603: "Plaintiffs contend that unless the Court allows ex parte immediate discovery, they will be irreparably harmed. While the Court does not dispute that infringement of a copyright results in harm, it requires a Coleridgian "suspension of disbelief" to accept that the harm is irreparable, especially when monetary damages can cure any alleged violation. On the other hand, the harm related to disclosure of confidential information in a student or faculty member's Internet files can be equally harmful.....Moreover, ex parte proceedings should be the exception, not the rule." Hon. Lorenzo F. Garcia, Magistrate Judge, District of New Mexico, May 24, 2007.

      9.     *UMG v. Lindor*, 2006 WL 3335048."[P]laintiffs can cite to no case foreclosing the applicability of the due process clause to the aggregation of minimum statutory damages proscribed under the Copyright Act. On the other hand, Lindor cites to case law and to law review articles suggesting that, in a proper case, a court may extend its current due process jurisprudence prohibiting grossly excessive punitive jury awards to prohibit the award of statutory damages mandated under the Copyright Act if they are grossly in excess of the actual damages suffered....." Hon. David G. Trager, Senior District Judge, Eastern District of New York, November 9, 2006.

      10.     *Hotaling v. Church of Jesus Christ of Latter-Day Saints,* 118 F.3d 199: "[D]istributing *unlawful* copies of a copyrighted work does violate the copyright owner's distribution right and, as a result, constitutes copyright infringement. In order to establish "distribution" of a copyrighted work, a party must show that an unlawful copy was disseminated "to the public." 17 U.S.C. § 106(3); see *National Car Rental v. Computer Associates*, 991 F.2d 426, 434 (8th Cir. 1993); 2 Nimmer, § 8.11[A] at 8-137." Hon. John D. Butzner, Jr., Fourth Circuit, June 30, 1997.[7]

### D.     NO EVIDENCE FILES ON BU DOE'S COMPUTER WERE UNLICENSED

      Legal, licensed digital music files on students' computers can be obtained from the

students' own CD's or by purchase from various music "stores" over the internet, for example

see the following quotes: "Our MP3-only strategy means all the music that customers buy on

---

[7.] An additional authority is www.recordinginstustryvspeople.blogspot.com, where attorneys Ray Beckerman and Ty Morlan have "made available" the above citations and the full opinions for the cited decisions.

Amazon is always DRM-free and plays on any device," said Amazon CEO Jeff Bezos in a statement." (from arstechnica.com); "having previously struck deals with Warner, EMI, and Universal Music.  * * *  Amazon now has 3.25 million DRM-free tracks in their library" (from http://www.techcrunch.com).

Furthermore, DRM-protected music files have been widely available for purchase by download for several years.

### E.        RIAA'S ILLEGAL INVESTIGATIONS

Although the undersigned attorney mentioned at the Hearing the fact that the Commonwealth has taken action[8] against MediaSentry for conducting private investigations of the students without a private investigator license and has sent MediaSentry a cease and desist letter, attorneys for plaintiff did not acknowledge this point.  The Court may want to consider issuing a subpoena, or alternatively having plaintiff's counsel produce a copy of the cease and desist letter received from the Commonwealth before allowing the MediaSentry evidence to be considered in this action.

### <u>CONCLUSION</u>

As stated in the memorandum supporting the pending motion, "Plaintiffs have not alleged that the individual users invited anyone to copy their music files. Plaintiffs have not alleged that the individual users were aware that anyone copied their music files. Plaintiffs have not alleged that the individual users were even aware that their music files could be copied by third parties such as plaintiffs' agents.  Plaintiffs have not alleged a duty for individual users to protect their

---

[8.] The source of this information is Massachusetts State Police, Danvers Barracks, Case Number #144-0014.

music files from copying by third parties over the internet." Plaintiffs did not deny these statements in their Opposition or at the Jan. 28, 2008, hearing.

In addition, the authorities, including this Circuit, are in agreement that mere authorization of an infringing act is an insufficient basis for copyright infringement. "Making available" is no more than "mere authorization." While it is possible that illegal copies were made by the students, it is also just as possible that they were unintentionally making their legal copies available and that no one copied them. No credible evidence has been offered to prove either possibility.

Citations have been submitted to opinions and orders of other members of the federal judiciary, leading copyright commentators, and related published articles, which shed light on the legal impropriety of plaintiffs' overall scheme.

The Court should therefore vacate the *Ex Parte* Order and, since the subpoena to Boston University was issued on the basis of that *Ex Parte* Order, quash the subpoena in its entirety under F.R.C.P. 45(c)(3).

Respectfully submitted,

JOHN DOE
By its Attorneys


/s/ Raymond Sayeg_____
Raymond Sayeg, BBO #555437
DENNER PELLEGRINO, LLP
Four Longfellow Place, 35th Floor
Boston, Massachusetts 02114
(617 ) 742-1184


Dated: February 4, 2008

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 4th day of February, 2008.

       John R. Bauer
       Nancy M. Cremins
       Robinson & Cole LLP
       One Boston Place
       Boston, MA 02108-4404

                               */s/ Raymond Sayeg*
                               Denner Pellegrino LLP

: