UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARISTA RECORDS LLC., et al.,<br><br>                           Plaintiffs,<br><br>   -against-<br><br>DOES 1-21,<br><br>                       Defendants. | Civil Action No. 04-cv-12434-NG<br>(Consolidated Docket Number)<br><br>Civil Action No. 07-cv-10834-NG<br>(Original Docket Number)<br><br><br>**LEAVE TO FILE GRANTED ON<br>FEBRUARY 6, 2008** |

**AMICUS CURIAE BRIEF OF THE ELECTRONIC FRONTIER FOUNDATION IN
SUPPORT OF DEFENDANT JOHN DOE'S MOTION TO QUASH SUBPOENA**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................iv

INTRODUCTION AND SUMMARY OF ARGUMENT .........................................................1

STATEMENT OF INTEREST ................................................................................................3

ARGUMENT..........................................................................................................................4

   I.   Plaintiffs Misstate the Applicable Legal Standard Where Anonymous Speakers Move to Quash a Subpoena Seeking Their Identity. ..............................................................................4

      A.   Anonymous Expression Enjoys a Qualified Privilege Under the First Amendment That Requires the Evaluation of Multiple Factors Prior to Subpoena Enforcement. .....................5

      B.   Plaintiffs Have Failed to Shoulder Their Burden Under the First Amendment.............8

   II.   Plaintiffs Ignore the Plain Language of § 106(3) and Thus Misstate the Scope of the Distribution Right. ................................................................................................................9

      A.   Under the Plain Language of § 106(3), Plaintiffs Must Prove that Actual Disseminations of Their Works Took Place....................................................................10

         1.   The Leading Authorities Agree that Distribution Requires Actual Dissemination of a Copy. ...............................................................................................................................10

         2.   Plaintiffs Can Muster No Persuasive Support for Their "Making Available" Conception of § 106(3)....................................................................................................12

      B.   The Statutory Language of § 106(3) Expressly Limits its Scope to Exchanges of Tangible Objects. ..........................................................................................................15

         1.   The Statute's Language, Structure, and Legislative History All Support the Limitation of § 106(3) to Material Objects....................................................................17

         2.   Contrary Precedents are Unpersuasive. ..................................................................18

3.   Misreading § 106(3) to Encompass Transmissions Undermines Other Provisions of

the Copyright Act...................................................................................................21

CONCLUSION.......................................................................................................................24

NOTICE OF ELECTRONIC FILING.....................................................................................25

# TABLE OF AUTHORITIES

## Cases

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)................................ 13, 18, 19

*Accord Resnick v. Copyright Clearance Center, Inc.,* 422 F.Supp.2d 252 (D. Mass. 2006)........10

*Agee v. Paramount Communications, Inc.,* 59 F.3d 317 (2d Cir. 1995)......................... 17, 20, 21

*Arista Records v. Greubel,* 453 F.Supp.2d 961 (N.D. Tex. 2006) .................................. 11, 14, 20

*Arista Records, Inc. v. Mp3Board.com, Inc.*, No. 00-Civ.-4660-SHS, 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002)............................................................................................11

*Atlantic Recording Corp. v. Howell,* No. CV-06-2076 (D. Ariz. brief filed Jan. 11, 2008).........14

*Atlantic Recording Corp. v. XM Satellite Radio*, No. 06-cv-03733, 2007 WL 136186 (S.D.N.Y. Jan. 19, 2007)...................................................................................................... 2, 22, 23

*Broadcast Music, Inc. v. Roger Miller Music, Inc.* 396 F.3d 762 (6th Cir. Tenn. 2005)...............19

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) .......................................6

*Doe v. 2theMart.com*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) .................................................6

*Elektra Enter. Group v. Barker*, No. 05-CV-7340 KMK (S.D.N.Y. brief filed Feb. 23, 2006) .....4

*Elektra Enter. Group v. Dennis*, No. 07-CV-39 DPJ JCS (S.D. Miss. brief filed Apr. 6, 2007)....4

*Fonovisa v. Alvarez*, No 1:06-CV-011 (N.D. Tex. brief filed June 1, 2006)................................4

*Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987)...............................................................6

*Greenbaum v. Google, Inc.*, 845 N.Y.S.2d 695 (N.Y.Sup. 2007)..................................................7

*Highfields Capital Mgmt.L.P. v. Doe*, 385 F. Supp.2d 969 (N.D. Cal. 2004) ..........................6, 7

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997).......14, 15

*In re Aimster Copyright Litigation,* 252 F. Supp. 2d 634 (N.D. Ill. 2002) ..................................19

*In re Napster, Inc. Copyright Litig.*, 377 F.Supp.2d 796, (N.D. Cal. 2005) ................... 11, 14, 18

*In re Verizon Internet Servs., Inc.,* 257 F.Supp.2d 244 (D.D.C.2003) .........................................5

*Interscope Records v. Duty,* No. 05-CV-3744, 2006 WL 988086 (D. Ariz. Apr. 14, 2006)........13

*Latin Amer. Music Co. v. Archdiocese of San Juan,* 499 F.3d 32 (1st Cir. 2007).......................10

*Marobie-FL, Inc. v. Nat'l Assoc. of Fire Equip. Distribs.,* 983 F.Supp. 1167 (N.D. Ill. 1997)....19

*Maverick Recording Co. v. Goldshteyn,* No. CV-05-4523, 2006 WL 2166870 (E.D.N.Y. 2006)14

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) ........................................................5

*McMann v. Doe,* 460 F.Supp.2d 259 (D. Mass. 2006) ...............................................................5

*N.Y. Times Co. v. Tasini*, 533 U.S. 483 (2001) .......................................................................19

*National Car Rental Sys., Inc. v. Computer Assoc. Int'l*, 991 F.2d 426 (8th Cir. 1993) .............11

*Online Policy Group v. Diebold Inc.,* 337 F.Supp.2d 1195 (N.D. Cal. 2004) ..............................1

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ................................. passim

*Perfect 10, Inc. v. Google Inc.*, 416 F.Supp.2d 828 (C.D. Cal. 2006)........................................11

*Playboy Enterprises, Inc. v. Frena,* 839 F.Supp. 1552 (M.D. Fla. 1993)............................ 19, 20

*Playboy Enterprises, Inc. v. Hardenburgh,* 982 F.Supp. 503 (N.D. Ohio 1997) ........................19

*Recording Indus. Ass'n of America, Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003)................................................................................................................................5

*Reno v. ACLU*, 521 U.S. 844 (1997).........................................................................................5

*Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977)..................................................6

*Sony Corp. v. Universal City Studios,* 464 U.S. 417 (1984) .......................................................3

*Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) .................................5

*Venegas-Hernandez v. ACEMLA,* 424 F.3d 50 (1st Cir. 2005)..................................................10

*Warner Bros. Records v. Payne,* No. W-06-CA-051, 2006 WL 2844415 (W.D. Tex. July 17, 2006) .....................................................................................................................................13

**Statutes**

17 U.S.C. § 101................................................................................................................12, 16

17 U.S.C. § 106(3)..................................................................................................................passim

17 U.S.C. § 106(4)-(6) ...........................................................................................................16

17 U.S.C. § 111........................................................................................................................23

17 U.S.C. § 114(d)(2).............................................................................................................22

17 U.S.C. § 122 ...........................................................................................................23

17 U.S.C. § 202 ...........................................................................................................16

Fed. R. Civ. P. 8(a) ......................................................................................................4

## Other Authorities

2 GOLDSTEIN ON COPYRIGHT (3d ed. 2007) ...............................................................11

2 NIMMER ON COPYRIGHT  (2007) ............................................................................11

4 PATRY ON COPYRIGHT (2007) .................................................................................11

David J. Loundy, *Revising the Copyright Law for Electronic Publishing,* 14 J. MARSHALL J. COMPUTER & INFO. (1995) ................................................................................20

John Borland, *Tension Grows Between Labels and Digital Radio*, CNET News.com (Jan. 13, 2006) .....................................................................................................................23

R. Anthony Reese, *The Public Display Right: The Copyright Act's Neglected Solution to the Controversy Over RAM Copies,* 2001 U. OF ILL. L. REV. 83, 126-27 (2001) .................. passim

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Electronic Frontier Foundation (EFF) files this brief as *amicus curiae* to address two issues raised by Defendant John Doe's pending motion to quash: (1) the proper constitutional standard governing subpoenas that seek to unmask otherwise anonymous speakers online and (2) the proper scope of the exclusive right of distribution as defined in § 106(3) of the Copyright Act.

Defendant in this case, like more than 20,000 other individuals nationwide, is being sued for copyright infringement based on his use of peer-to-peer (P2P) file sharing software. At this stage of the proceedings, Defendant's identity is unknown, and no evidence has been introduced to demonstrate that Plaintiffs have targeted the correct individual or that their suit has any merit whatsoever. As discussed further below, Plaintiffs may not pierce Defendant's anonymity based solely on the allegations of their unverified, boilerplate Complaint—the First Amendment requires that they introduce *evidence* that pertains to this individual Defendant.[1] Plaintiffs may be able to make an adequate showing as the action progresses. If, as Plaintiffs allege, this case is just one more in the thousands brought against individual file sharers, meeting the constitutional standard should pose few difficulties. However, application of the correct standard remains critical, lest copyright owners be tempted to misuse copyright litigation as a pretext for censorship or other improper purpose. *See, e.g., Online Policy Group v. Diebold Inc.,* 337 F.Supp.2d 1195 (N.D. Cal. 2004) (copyright action brought by electronic voting machine vendor in order to suppress internal company documents regarding product flaws).

-----

[1] If Plaintiffs' earlier declaration is to be credited, Plaintiffs have gathered particularized evidence with respect to each Defendant. *See* Linares Decl. ¶ 14, Exhibit A to Memorandum in Support of Ex Parte for Leave to Take Immediate Discovery, Docket No. 5 (filed May 2, 2007) ("For each suspected infringer, MediaSentry downloads a number of the music files that the individual is offering to other users….").

1

In addition, when applying the correct constitutional standard to the instant motion to quash, the Court will have to make preliminary inquiries into the merits of Plaintiffs' case. There are at least two fundamental infirmities in Plaintiffs' distribution claims,[2] which appear to be premised on the erroneous notion that merely making a sound recording available on the Internet infringes the distribution right set out in 17 U.S.C. § 106(3). This proposition, if accepted, would contravene both the plain language of the Copyright Act and applicable precedents, threatening to disrupt copyright law in a variety of contexts beyond this case.

For example, several Plaintiffs have already sued a national radio broadcaster, XM Radio, based on a variant of the same "making available" theory that they advance here. *See Atlantic Recording Corp. v. XM Satellite Radio*, No. 06-CV-03733, 2007 WL 136186 at *1 (S.D.N.Y. Jan. 19, 2007).[3] Similarly, copyright owners have (unsuccessfully) pressed this theory against Google, contending that the Internet search engine runs afoul of an expansive "making available" conception of the distribution right. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007). This Court should reject Plaintiffs' effort to further distort copyright jurisprudence on the backs of the Doe Defendant here. As will be discussed below, an infringement of the distribution right requires the unauthorized, actual dissemination of copies of a copyrighted work. Consequently, in order to overcome the instant motion to quash, Plaintiffs will have to come forward with at least some modicum of evidence (to the extent that such evidence is within their control) demonstrating actual dissemination by Defendant.

---

[2] *Amicus* express no views as to the merits of Plaintiffs' reproductions claims, other than to note that Plaintiffs must introduce particularized evidence in order to meet the applicable constitutional standards discussed below.

[3] Several of the record label plaintiffs in that suit have recently settled with XM. *See* Reuters, "XM Satellite Resolves Lawsuit with Sony BMG," Feb. 1, 2008 (available at <http://www.reuters.com/article/rbssTechMediaTelecomNews/idUSWNAS901420080201>).

Plaintiffs' distribution theory also suffers from another, more fundamental defect: § 106(3) only applies to distributions of tangible, material objects. This is borne out by the plain language of § 106(3), as well as the statute's structure and legislative history. Accordingly, because Plaintiffs' Complaint alleges only acts of electronic dissemination over computer networks, rather than any hand-to-hand exchanges of tangible objects, the distribution claim has no merit, and thus cannot be used to defeat the instant motion to quash.[4]

In short, Plaintiffs' distribution claims are at odds with the language of § 106(3). While copyright laws must occasionally be updated to address new technologies, it is for Congress, not the courts, to rewrite the Copyright Act for this purpose. *See Sony Corp. v. Universal City Studios,* 464 U.S. 417, 431 (1984) ("Sound policy, as well as history, supports our consistent deference to Congress when major technological innovations alter the market for copyrighted materials.").

## STATEMENT OF INTEREST

EFF is a member-supported, nonprofit public interest organization devoted to maintaining the traditional balance that copyright law strikes between the interests of copyright owners and the interests of the public. Founded in 1990, EFF represents more than 13,000 dues-paying members including consumers, hobbyists, computer programmers, entrepreneurs, students, teachers, and researchers united in their reliance on a balanced copyright system that ensures adequate protection for copyright owners while ensuring broad access to information in the digital age. Because a ruling on this motion may have implications for anonymous speech, consumers, and new technology innovators, EFF has a strong interest independent of the parties

---

[4] Whether or not Plaintiffs are able to make an adequate showing on the merits of their *reproduction* claims to overcome the motion to quash will depend upon the nature of the particularized evidence Plaintiffs are able to introduce.

in ensuring that the correct motion to quash standard and proper interpretation of § 106(3) are applied in this and other cases.[5]

**ARGUMENT**

**I.     Plaintiffs Misstate the Applicable Legal Standard Where Anonymous Speakers Move to Quash a Subpoena Seeking Their Identity.**

Plaintiffs have failed to articulate, let alone meet, the appropriate First Amendment standard for identifying anonymous online speakers. Plaintiffs must not merely satisfy their obligations under the liberal pleading standard of Fed. R. Civ. P. 8(a), or simply plead a prima facie claim, or satisfy a "flexible good cause" standard, as they suggest in their Opposition to the Motion to Quash. *See* Plfs. Opp. at 3, 6, 7-10. Rather, where litigants attempt to unmask anonymous speakers, the First Amendment requires that they (among other things) submit competent evidence to support each element of their claim sufficient to raise a genuine fact issue—a summary judgment standard—and demonstrate that the necessity of obtaining the identifying information outweighs the speaker's First Amendment anonymity interests. By failing to introduce *any* evidence pertaining to Defendant and choosing instead to stand on the allegations in their unverified Complaint, Plaintiffs have (at least thus far) failed to meet these constitutional requirements.

---

[5] EFF has appeared as *amicus curiae* in four other district court cases that have addressed the scope of the distribution right on the Internet, *Elektra Enter. Group v. Barker*, No. 05-CV-7340 KMK (S.D.N.Y. brief filed Feb. 23, 2006); *Fonovisa v. Alvarez*, No 1:06-CV-011 (N.D. Tex. brief filed June 1, 2006); *Elektra Enter. Group v. Dennis*, No. 07-CV-39 DPJ JCS (S.D. Miss. brief filed Apr. 6, 2007); and *Atlantic Recording Corp. v. Howell,* No. CV-06-2076 (D. Ariz. brief filed Jan. 11, 2008). EFF has also appeared as *amicus curiae* in more than a dozen cases to address the constitutional standards applicable to anonymous speech online.

A.    **Anonymous Expression Enjoys a Qualified Privilege Under the First Amendment That Requires the Evaluation of Multiple Factors Prior to Subpoena Enforcement.**

The Supreme Court has consistently defended the right to anonymous speech in a variety of contexts, noting that a speaker's "decision to remain anonymous … is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). These anonymity interests apply equally to paper leaflets and Internet communications. *See Reno v. ACLU*, 521 U.S. 844, 870 (1997) (there is "no basis for qualifying the level of First Amendment protection that should be applied to" the Internet); *McMann v. Doe,* 460 F.Supp.2d 259, 266 (D. Mass. 2006) ("Speech on the internet receives First Amendment protection. First Amendment protection includes protection of anonymous speech."). Courts have concluded that these protections for anonymity extend to individuals using P2P file sharing software. *See, e.g., Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) ("Arguably … a file sharer is making a statement by downloading and making available to others copyrighted music without charge and without license to do so. Alternatively, the file sharer may be expressing himself or herself through the music selected and made available to others."); *In re Verizon Internet Servs., Inc.,* 257 F.Supp.2d 244, 260 (D.D.C. 2003) (holding that the use of peer-to-peer file sharing networks is entitled to some level of First Amendment to protection), *rev'd on other grounds*, *Recording Indus. Ass'n of America, Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003).

Because the First Amendment protects anonymous speech and association, efforts to use the power of the courts to pierce anonymity are subject to a qualified privilege. Just as in other cases in which litigants seek information that may be privileged, courts must consider the privilege before permitting discovery of a defendant's identity. *See McMann v. Doe,* 460 F.Supp.2d at 266 ("Courts must adopt an appropriate standard such that aggrieved parties can

5

obtain remedies, but can not demand the court system unmask every insolent, disagreeable, or fiery anonymous online figure."); *see also Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987); *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure."); *Doe v. 2theMart.com*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001) ("[D]iscovery requests seeking to identify anonymous Internet users must be subject to careful scrutiny by the courts.").

The constitutional privilege to remain anonymous is not absolute. Plaintiffs may properly seek information necessary to pursue reasonable and meritorious litigation. *See Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999) (First Amendment does not protect anonymous Internet users from liability for tortious acts such as defamation); *Doe v. Cahill*, 884 A.2d at 456 ("Certain classes of speech, including defamatory and libelous speech, are entitled to no constitutional protection."). Accordingly, courts evaluating attempts to unmask anonymous speakers have adopted standards that balance an individual's right to engage in anonymous expression against a litigant's legitimate need to pursue a claim. These courts have recognized that "setting the standard too low w[ould] chill potential posters from exercising their First Amendment right to speak anonymously," and have therefore required plaintiffs to demonstrate that their claims are valid and that they have suffered a legally cognizable harm *before* the court will allow disclosure of the speaker's identity. *Doe v. Cahill*, 884 A.2d at 457; *see also Dendrite Int'l v. Doe No. 3*, 342 N.J.Super. 134, 141-42 (App. Div. 2001); *Highfields Capital Mgmt.L.P. v. Doe*, 385 F. Supp.2d 969 (N.D. Cal. 2004) .

The opinion in *Dendrite Int'l v. Doe No. 3*, 342 N.J. Super. 134 (App. Div. 2001), remains the leading precedent regarding "the appropriate procedures to be followed and the

standards to be applied by courts in evaluating applications for discovery of the identity."[6] *Id* at

140. The court in *Dendrite* described those procedures as follows:

1. make reasonable efforts to notify the accused Internet user of the pendency of the identification proceeding and explain how to present a defense;

2. quote verbatim the allegedly actionable online speech [if the underlying claim is defamation];

3. allege all elements of the cause of action;

4. present evidence supporting the claim of violation; and,

5. "[f]inally, assuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."

*Id.* at 141-42.

The *Dendrite* standard protects anonymous speech while ensuring that the First Amendment is not used to "shield copyright infringement" (as some plaintiffs have complained). *Sony Music v. Does 1-40*, 326 F.Supp. 2d at 562-63. Where the identity of an anonymous speaker is at issue, the First Amendment simply requires that litigants demonstrate that their claims are more than a pretext for censorship or other improper purpose. That requirement applies whether the claims involve defamation (which also enjoys no First Amendment protections), *see Doe v. Cahill*, 884 A.2d at 456, or intellectual property rights. Indeed, if this Court were to adopt the relaxed pleading standard proposed by Plaintiffs, copyright infringement would be the sole speech-related tort immunized from *Dendrite* scrutiny. This would only serve

---

[6] The *Dendrite* test has been endorsed and applied by other state and federal courts. *See, e.g., Mobilisa, Inc. v. John Doe 1*, 170 P.3d 712, 719-21 (Ariz. Ct. App. 2007); *Greenbaum v. Google, Inc.*, 845 N.Y.S.2d 695, 698 (N.Y.Sup. 2007); *Doe v. Cahill*, 884 A.2d at 459-60 (applying a modified *Dendrite* test); *Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d at 974-76.

to encourage unscrupulous copyright owners (and *Amicus* has no reason to think this description applies to Plaintiffs here) to use pretextual copyright infringement claims to unmask anonymous critics, parodists, commentators, and others who are lawfully entitled to make unauthorized fair use of copyrighted works. Only if copyright owners are required to meet this heightened First Amendment standard will anonymous speakers have an opportunity to challenge such pretextual copyright claims *before* their anonymity is compromised.

**B.    Plaintiffs Have Failed to Shoulder Their Burden Under the First Amendment.**

While it appears that Plaintiffs have satisfied the first three prongs of the *Dendrite* standard, they have yet to come forward with particularized evidence as required by the fourth prong. *Compare Sony Music v. Does 1-40*, 326 F.Supp. 2d at 565 ("Plaintiffs have submitted supporting evidence listing the copyrighted songs downloaded or distributed by defendants using P2P systems."). Specifically, Plaintiffs must "introduce evidence creating a genuine issue of material fact for all elements" to the extent such evidence is within their control. *Doe v. Cahill*, 884 A.2d at 463; *accord Mobilisa v. Doe,* 170 P.3d at 720 (requiring the "requesting party to demonstrate it would survive a motion for summary judgment filed by Doe on all of the elements within the requesting party's control…."); *Dendrite*, 342 N.J.Super. at 141 ("plaintiff must produce sufficient evidence supporting each element of its cause of action, on a prima facie basis, prior to a court ordering the disclosure of the identity of the unnamed defendant.").

Furthermore, once Plaintiffs have met that evidentiary burden, the Court must then balance the respective interests of the parties and evaluate the "necessity for the disclosure of the anonymous defendant's identity." *Dendrite,* 342 N.J.Super. at 142; *accord Mobilisa v. Doe,* 170 P.3d at 720 ("[R]equiring the court to balance the parties' competing interests is necessary to achieve appropriate rulings in the vast array of factually distinct cases likely to involve

anonymous speech."). Plaintiffs' subpoena is, at best, premature. Absent evidence supporting each element of their claims (such as a declaration from MediaSentry regarding the date, time, and titles of its alleged downloads from Defendant), Plaintiffs' subpoena must be quashed.

## II. Plaintiffs Ignore the Plain Language of § 106(3) and Thus Misstate the Scope of the Distribution Right.

In applying the constitutional standard described above, the Court will be called on to preliminarily evaluate the merits of Plaintiffs' copyright infringement claims. In doing so, the Court should consider two fundamental legal infirmities in Plaintiffs' distribution claims.

The "distribution right" is defined in section 106(3) of the Copyright Act, granting to a copyright owner the exclusive right "**to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending**." 17 U.S.C. § 106(3).[7] As this language makes clear, the exclusive right granted by § 106(3) is infringed only by the *completed* distribution of *certain things* ("copies or phonorecords of the copyrighted work" ), to *certain people* ("the public"), in *certain ways* ("by sale or other transfer of ownership, or by rental, lease, or lending").

Plaintiffs' Complaint here appears to be premised on allegations that the Defendants have infringed the distribution right merely by making music files available to others over the Internet. To the extent this is the gravamen of their distribution claim, the claim must fail for two reasons. First, § 106(3) requires an actual dissemination of a copy; merely "making available" is at most a non-actionable *attempt* at infringement. Second, § 106(3) is limited by its terms to exchanges of tangible material objects, and thus does not reach electronic transmissions over the Internet.

---

[7] Plaintiffs have also asserted claims under the "reproduction right," defined in § 106(1). *Amicus* expresses no view on the legal sufficiency of those claims.

**A.    Under the Plain Language of § 106(3), Plaintiffs Must Prove that Actual Disseminations of Their Works Took Place.**

Section § 106(3) bestows on the owner of a copyright the exclusive right "*to distribute* copies or phonorecords of the copyrighted work…." 17 U.S.C. § 106(3). The language of § 106(3) does not include any prohibitory language pertaining to *offers* to distribute, *attempts* to distribute, or the "making available" of copyrighted works.  In short, the statute makes the completed act of distribution the dividing line that separates lawful from unlawful conduct.

**1.    The Leading Authorities Agree that Distribution Requires Actual Dissemination of a Copy.**

Plaintiffs' effort to rewrite § 106(3) to reach mere attempts at dissemination is squarely foreclosed by binding circuit authority. In *Latin Amer. Music Co. v. Archdiocese of San Juan*, 499 F.3d 32 (1st Cir. 2007), the First Circuit held that:

> Mere authorization of an infringing act is an insufficient basis for copyright infringement. Infringement depends upon whether an infringing act, such as copying or performing, has occurred. Therefore, to prove infringement, a claimant must show "an infringing act after the authorization."

*Id.* at 46 (citing *Venegas-Hernandez v. ACEMLA,* 424 F.3d 50, 57-59 (1st Cir. 2005)). The facts at issue in *Latin American Music v. Archdiocese* are telling. In that case, the First Circuit found that listing a song in a catalog, issuing licenses for its performance, and offering songs on a website were not enough to establish infringement in the absence of evidence beyond mere "authorization." *Accord Resnick v. Copyright Clearance Center, Inc.,* 422 F.Supp.2d 252, 259 (D. Mass. 2006) ("Where there is no direct proof of an infringing act after the authorization, no infringement has occurred.")  (internal quotes omitted). In other words, infringement of the distribution right depends upon whether an *actual* distribution has occurred.

Relevant authorities from other circuits are in agreement. In *Perfect 10 v. Amazon.com,* the Ninth Circuit concluded that "distribution requires an 'actual dissemination' of a copy."

*Perfect 10 v. Amazon.com,* 508 F.3d at 1162, *affirming in relevant part, Perfect 10, Inc. v. Google Inc.*, 416 F.Supp.2d 828, 844 (C.D. Cal. 2006). In that case, the copyright owner sought a preliminary injunction against Google, arguing (among other things) that Google directly infringed its distribution rights by indexing and linking to infringing photographs posted on the Internet by third parties. The district court disagreed, holding that: "A distribution of a copyrighted work requires an 'actual dissemination' of copies." *Perfect 10 v. Google*, 416 F.Supp.2d at 844 (citing *In re Napster, Inc. Copyright Litig.*, 377 F.Supp.2d 796, 802-04 (N.D. Cal. 2005)). On appeal, the Ninth Circuit affirmed the district court on this point:

> The district court reasoned that distribution requires an "actual dissemination" of a copy. Because Google did not communicate the full-sized images to the user's computer, Google did not distribute these images. Again, the district court's conclusion on this point is consistent with the language of the Copyright Act.

*Perfect 10 v. Amazon.com*, 508 F.3d at 1162 (internal citations omitted). Other courts that have addressed this issue are in accord with the First and Ninth Circuits. *See National Car Rental Sys., Inc. v. Computer Assoc. Int'l*, 991 F.2d 426, 434 (8th Cir. 1993); *In re Napster*, 377 F.Supp.2d at 802 (N.D. Cal. 2005) (collecting authorities); *Arista Records, Inc. v. Mp3Board.com, Inc.*, No. 00-Civ.-4660-SHS, 2002 WL 1997918 at *4 (S.D.N.Y. Aug. 29, 2002).

The leading copyright law commentators also unanimously agree that "an actual transfer must take place; a mere offer for sale will not infringe the right." Paul Goldstein, 2 GOLDSTEIN ON COPYRIGHT § 7.5.1 (3d ed. 2007); *accord* Melville B. Nimmer & David Nimmer, 2 NIMMER ON COPYRIGHT § 8.11[A] (2007); William F. Patry, 4 PATRY ON COPYRIGHT § 13:9 (2007) ("[W]ithout actual distribution of copies…, there is no violation of the distribution right.").

These authorities make it plain that, in order to prevail on their distribution claims, Plaintiffs will have to come forward with evidence sufficient to demonstrate that actual

distributions to third parties took place.[8] To permit a finding of distribution liability on anything

less would be to transform § 106(3) into an unbounded form of civil attempt liability, where the

mere possibility of a dissemination would trigger infringement liability, even where no copies

had ever been distributed and thus no harm had ever been inflicted on the copyright owner.

> **2.    Plaintiffs Can Muster No Persuasive Support for Their "Making Available" Conception of § 106(3).**

In other cases involving individual defendants accused of file sharing, Plaintiffs have

tried, but failed, to marshal authorities to support a "making available" view of the distribution

right.

For example, beginning with the statute, Plaintiffs have pointed to the statutory definition

of "publication" (which expressly encompasses "offering to distribute"). From this starting point,

Plaintiffs have asserted that "publication" and "distribution" have been treated as synonymous

for some purposes by some courts and therefore that the definition of "publication" should be

read to expand the meaning of "distribute." This logic is hopelessly flawed. The express

inclusion of "offering to distribute" in the definition of "publication" actually underscores the

fact that Congress knew how to reach mere offers when it wished to do so. *See* 17 U.S.C. § 101

---

[8] Nor can evidence of downloads by Plaintiffs' own investigators satisfy this burden. It is axiomatic that a copyright owner cannot infringe its own copyright. *See Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348 (8th Cir. 1994). By the same token, an authorized agent acting on behalf of a copyright owner cannot infringe any rights held by that owner. *See Higgins v. Detroit Educ. Television Found.*, 4 F.Supp.2d 701, 705 (E.D. Mich.1998). Accordingly, where the only evidence of infringing distribution consists of downloads to authorized agents of the copyright owner, that evidence cannot, by itself, establish that other, unauthorized downloads have taken place. If § 106(3) requires that a copyright owner establish that actual unauthorized disseminations took place, Plaintiffs should not be able to bootstrap their way to that conclusion simply by hiring an investigator to manufacture evidence of infringements that would otherwise never have occurred.

("The offering to distribute copies or phonorecords…constitutes publication."). In this respect, the two terms are *not* synonymous, as noted by a leading copyright commentator:

> This statement [that "publication" and "distribution" are synonymous] is not found in any of the legislative reports, and in at least one important respect is incorrect; while the mere offering to sell copies of a novel to bookstores for subsequent sale to customers constitutes publication *due to the statutory definition of publication*, without actual distribution of copies of the novel, there is no violation of the distribution right.

4 PATRY ON COPYRIGHT § 13:9 (emphasis in original).[9]

Turning to judicial precedents, Plaintiffs have in previous cases clung to a single line of *obiter dicta* in the Ninth Circuit's ruling in *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights."). Plaintiffs contend that this statement spares a copyright owner from having to prove that any actual distributions of copyrighted materials ever took place.

This misreads *A&M Records v. Napster*. In that appeal, the defendant did not dispute evidence that millions of Napster users were actively trading copyrighted materials. *See Napster*, 239 F.3d at 1013. Moreover, because the appeal turned on application of secondary liability principles, there was no need for the court in inquire into the circumstances of any particular Napster user—it was enough that millions were actively swapping files, thus providing direct infringements for which Napster could be held secondarily liable. In other words, the court and parties alike assumed the existence of an avalanche of *actual* disseminations, making it unnecessary to express any view on whether *merely* "making available," without more, could

---

[9] At least two district courts have been led astray by Plaintiffs' invitation to treat "publication" and "distribution" as synonyms despite the difference in their statutory language. *See Interscope Records v. Duty,* No. 05-CV-3744, 2006 WL 988086 at *2 (D. Ariz. Apr. 14, 2006); *Warner Bros. Records v. Payne,* No. W-06-CA-051, 2006 WL 2844415 at *3 (W.D. Tex. July 17, 2006).

infringe the § 106(3) distribution right. In subsequent rulings that have squarely faced that issue, the Ninth Circuit and lower courts have repeatedly rejected a broad "making available" theory in favor of requiring evidence of actual dissemination. *See Perfect 10 v. Amazon.com*, 508 F.3d at 1162; *In re Napster*, 377 F.Supp.2d at 802-04.

District courts in other cases involving individual file sharers have also been less than enthusiastic about Plaintiffs' "making available" theory, deferring the issue at the motion to dismiss stage based on Plaintiffs' alternate allegations of actual distribution. *See Maverick Recording Co. v. Goldshteyn,* No. CV-05-4523, 2006 WL 2166870 at *3 (E.D.N.Y. 2006); *Arista Records v. Greubel,* 453 F.Supp.2d 961, 971 (N.D. Tex. 2006). The only court to have reached the matter on summary judgment initially ruled in Plaintiffs' favor over the objections of a *pro se* defendant, only to vacate its ruling on reconsideration after receiving additional briefing on the weaknesses of Plaintiffs' "making available" theory. *See Atlantic Recording Corp. v. Howell,* No. CV-06-2076, 2007 WL 2409549 (D. Ariz. Aug. 20, 2007) , *vacated on reconsideration* (order filed Sept. 27, 2007).[10]

Plaintiffs may attempt to fall back on the Fourth Circuit ruling in *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997). In that case, a copyright owner sued a number of libraries that had made infringing copies of a microfiche work. Because the plaintiff's reproduction claims were time-barred, she was left with only a distribution claim. Because the libraries had no records of loans to patrons, the plaintiff was also unable to prove any actual loans to the public. The Fourth Circuit nevertheless found that the plaintiff could proceed with her distribution claim, reasoning that "a library distributes a published work, …

---

[10] EFF has filed an *amicus curiae* brief in *Atlantic v. Howell*, which is set for further oral argument on Feb. 22, 2008.

when it places an unauthorized copy of the work in its collection, includes the copy in its catalog or index system, and makes the copy available to the public." *Id.* at 201. This outcome, perhaps motivated by sympathy for the plaintiff, *see id.* at 205 (Hall, J., dissenting), cannot be squared with the statutory language of § 106(3) or with the authorities discussed above. The opinion has also drawn the criticism of commentators. *See* 4 PATRY ON COPYRIGHT § 13:9. This Court should decline to follow it in light of the contrary First Circuit authorities cited above.[11]

In summary, the controlling authorities make it clear that in order to prove an infringement of their distribution rights, Plaintiffs must demonstrate that Defendant actually transmitted particular sound recordings to other users. Unless Plaintiffs can produce at least some minimal quantum of evidence on this element of their distribution claim, that claim cannot defeat Defendant's motion to quash.

**B.      The Statutory Language of § 106(3) Expressly Limits its Scope to Exchanges of Tangible Objects.**

Plaintiffs' distribution claims fail for another, more fundamental reason, as well: §106(3)'s express statutory language limits its reach to distribution of tangible, material objects. In the words of the most comprehensive scholarly treatment of § 106(3)'s application to the

---

[11] In other cases, Plaintiffs have invoked a number of other decisions, all of which are inapposite. For example, Plaintiffs have cited *United States v. Shaffer,* 472 F.3d 1219 (10th Cir. 2007), which involved a criminal statute unrelated to copyright prohibiting the distribution of child pornography. The court there was not called on to construe "distribution" as defined in 17 U.S.C. § 106(3). Similarly, in *Sony Pictures Home Entertainment, Inc. v. Lott,* 471 F.Supp.2d 716 (N.D. Tex. 2007), the *pro se* defendant appears not to have raised any arguments relating to the proper scope of the distribution right, relying instead on a "mistaken identity" defense. *See id.* at 721. Finally, a recent jury instruction obtained by Plaintiffs in *Capitol Records, Inc. v. Thomas,* No. 06-CV-1497 (MJD/RLE) (D. Minn. 2007), sheds no light on the reasoning employed by the court, the evidence presented at trial, nor the arguments raised by the defendant. *See* Declan McCullagh, "Four Reasons Why the RIAA Won a Jury Verdict of $220,000," CNET News.com, Oct. 5, 2007 (available at <http://www.news.com/8301-13578_3-9791764-38.html>) (discussing the "making available" jury instruction in question).

digital realm, "the distribution right as currently framed…does not appear to encompass transmissions of copyrighted works over computer networks." R. Anthony Reese, *The Public Display Right: The Copyright Act's Neglected Solution to the Controversy Over RAM Copies,* 2001 U. OF ILL. L. REV. 83, 126-27 (2001) .

By its terms, § 106(3) reaches only distributions of "*copies or phonorecords* of the copyrighted work," rather than reaching *all* distributions of the copyrighted work. *See* 17 U.S.C. § 106(3) (granting the exclusive right "to distribute copies or phonorecords of the copyrighted work"). The Copyright Act, in turn, defines both "copies" and "phonorecords" as "material objects" in which copyrighted works are fixed. *See* 17 U.S.C. § 101; *see also* 17 U.S.C. § 202 (distinguishing ownership of work from ownership of copies); H.R. Rep. No. 94-1476, at 53 (1976)[12] (hereafter "1976 House Report") (emphasizing "fundamental distinction" between the intangible copyrighted work and the material objects in which it can be embodied). If Congress had meant to reach distributions of all kinds, it could easily have done so by simply stating that a copyright owner has the exclusive right to distribute the copyrighted work, as it did when defining the scope of the public performance and display rights. *See* 17 U.S.C. § 106(4)-(6) (granting the exclusive right to perform or display "the copyrighted work" publicly). In short, the express language of § 106(3) establishes that "the copyright owner's exclusive right of distribution is a right to distribute such *tangible, physical things*." Reese, *The Public Display Right,* 2001 U. OF ILL. L. REV. at 126 (emphasis added).

---

[12] The 1976 House Report, which is the principal legislative history for the 1976 Copyright Act that forms the basis of Title 17, is reprinted at 1976 U.S.C.A.A.N. 5659 and is included as an appendix in the copyright law treatises, PAUL GOLDSTEIN, GOLDSTEIN ON COPYRIGHT (3d ed. 2005) and MELVILLE NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT (2007).

### 1.    The Statute's Language, Structure, and Legislative History All Support the Limitation of § 106(3) to Material Objects.

In addition to the section 106(3)'s express limitation to "material objects," the relevant legislative history further buttresses Prof. Reese's conclusions. For example, the 1976 House Report, in discussing § 106(3), consistently refers to the distribution right as the right to distribute "copies" and "phonorecords," each of which denotes solely material objects. *See id.* at 127 (citing the 1976 House Report at 72). When referring to the intangible copyrighted work, separate from a tangible copy, the 1976 House Report and the Copyright Act, as well as copyright specialists generally, refer to the "work" or "sound recording" rather than "copies" or "phonorecords."

The limitation of § 106(3) to distribution of material objects is further borne out by the treatment of "publication" under the Copyright Act. *See id.* at 131-32. As discussed above, courts have recognized that the interrelated statutory definitions of "distribution" and "publication" can shed light on each of their respective scopes. *See Agee v. Paramount Comm., Inc.,* 59 F.3d 317, 325 (2d Cir. 1995). Whereas the inclusion of "offering to distribute" in the definition of "publication" highlights the omission of "offering" in § 106(3), the two definitions echo each other insofar as their scopes are both limited to "copies and phonorecords" (i.e., material objects). In this connection, the legislative history explaining this limitation in the publication context should be read to shed light on the scope of the same restriction in the § 106(3) context:

> The definition…makes it plain that *any form of dissemination in which a material object does not change hands*—performances or displays on television, for example—*is not publication* no matter how many people are exposed to the works.

1976 House Report at 138 (emphasis added); *see also* Reese, *The Public Display Right*, at 131-23 (discussing relation of "publication" and other copyright provisions to "distribution").[13]

### 2.    Contrary Precedents are Unpersuasive.

Despite § 106(3)'s limitation to material objects, a number of cases have overlooked the statutory language and concluded, summarily or in dicta, that transmissions over computer networks can violate § 106(3). None of these precedents can override the express language of the statute, and none is binding on this Court.

The Ninth Circuit has gone the farthest in misunderstanding the scope of § 106(3). In two cases, it has suggested in dicta that transmissions over the Internet may infringe the distribution right. This erroneous view had its genesis in *A&M Records v. Napster*, where the court opined that "Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights." *A&M Records v. Napster,* 239 F.3d at 1014. As mentioned above, because the existence of direct infringement was never disputed by the defendant in that

---

[13] The lack of legislative amendment of § 106(3) since the passage of the 1976 Copyright Act also supports the view that § 106(3) is properly limited to situations where material objects change hands. *See* Reese, *The Public Display Right*, at 133 (discussing the 1995 "digital phonorecord delivery" amendments to § 115 and No Electronic Theft Act); *In re Napster,* 377 F.Supp.2d 796, 804 (N.D. Cal. 2005) (holding that the Artists' Rights and Theft Prevention (ART) Act of 2005 does not expand the scope of § 106(3)).

Congressional unwillingness to amend § 106(3) to encompass digital transmission has not been the result of inattention. During the early 1990s, the Clinton Administration undertook a comprehensive inter-agency review of copyright in order to propose updates to the law to in light of digital technologies. The resulting 1995 report, known as "The NII White Paper," specifically proposed an amendment to § 106(3), noting that "it is unclear under the current law that a transmission can constitute a distribution of copies or phonorecords of a work." INFORMATION INFRASTRUCTURE TASK FORCE, INTELLECTUAL PROPERTY AND THE NATIONAL INFORMATION INFRASTRUCTURE: THE REPORT OF THE WORKING GROUP ON INTELLECTUAL PROPERTY RIGHTS at 213 (1995) (available at <http://www.uspto.gov/web/offices/com/doc/ipnii/>).  Although bills were subsequently introduced that would have amended § 106(3) to include transmissions, they did not pass. See H.R. 2441, 104th Cong. § 2 (1995); S. 1284, 104th Cong. § 2 (1995); Reese, *The Public Display Right*, at 135.

preliminary injunction appeal, the statement is dicta. *A&M Records v. Napster,* 239 F.3d at

1013.[14] More recently, in *Perfect 10 v. Amazon.com*, the Ninth Circuit reiterated its *Napster*

dicta and further opined that "[t]he Supreme Court has indicated that in the electronic context,

copies may be distributed electronically." *Perfect 10 v. Amazon.com,* 508 F.3d at 1162. Not so.

The Supreme Court decision relied upon by the Ninth Circuit, *N.Y. Times Co. v. Tasini*, 533 U.S.

483, 498 (2001), addressed the proper interpretation of § 201(c) of the Copyright Act. The Court

had not been asked to address the scope of § 106(3) or its application to computer networks, and

thus the decision does not support the broad proposition for which it was cited by the Ninth

Circuit.

Several district court rulings have also included loose language, unsupported by analysis,

suggesting that transmissions over computer networks can infringe § 106(3). *See, e.g., Marobie-*

*FL, Inc. v. Nat'l Assoc. of Fire Equip. Distribs.,* 983 F.Supp. 1167, 1173 (N.D. Ill. 1997);

*Playboy Enterprises, Inc. v. Hardenburgh,* 982 F.Supp. 503, 513 (N.D. Ohio 1997); *Playboy*

*Enterprises, Inc. v. Frena,* 839 F.Supp. 1552, 1556 (M.D. Fla. 1993). None of these cases is

binding on this Court, nor are they persuasive on the question of the proper scope of § 106(3).[15]

None addresses the plain language of § 106(3) or explains the basis for extending the right

beyond the distribution of material objects. *See* Reese, *The Public Display Right* at 128 & n.174

("The cases that conclude that a transmission over a computer network is a distribution offer no

---

[14] Similarly, the existence of direct infringement was conceded by the defendants in *In re Aimster Copyright Litigation,* 252 F. Supp. 2d 634, 648 (N.D. Ill. 2002), *aff'd,* 334 F.3d 643 (7th Cir. 2003), and thus the question of the scope of § 106(3) was never briefed by the parties or analyzed by the courts.

[15] The current Register of Copyrights, Marybeth Peters, has also occasionally opined that § 106(3) should be read to reach Internet transmissions. Her views, however, cannot override th express statutory language. *See Broadcast Music, Inc. v. Roger Miller Music, Inc.* 396 F.3d 762, 778 (6th Cir. Tenn. 2005) ("Copyright Office…interpretations suggested in opinion letters— which lack the force of law—are entitled to respect only insofar as they are persuasive.").

explanation for how such activity constitutes a transfer of a material object within the scope of §

106(3)."). In each of these cases, moreover, the invocation of the distribution right was redundant

and unnecessary, as the defendants had also infringed either the reproduction or public display

right. Finally, these cases are built on the 1993 ruling in *Playboy v. Frena,* 839 F.Supp. at 1556,

which itself has been criticized by commentators and includes no rationale to support its

expansive view of § 106(3). *See* Reese, *The Public Display Right,* at n.174; David J. Loundy,

*Revising the Copyright Law for Electronic Publishing,* 14 J. MARSHALL J. COMPUTER & INFO. L.

1, 21 (1995) (criticizing *Frena* for misapplying § 106(3)).[16]

The Second Circuit, in contrast, has embraced the better reasoned approach, concluding

that the § 106(3) distribution right does not encompass electronic transmissions. In *Agee v.*

*Paramount Communications*, 59 F.3d 317 (2d Cir. 1995), the court specifically examined

whether the electronic transmission of a sound recording, resulting in a reproduction by a third

party, could infringe § 106(3). In that case, Paramount Pictures "copied portions of [plaintiff's]

sound recording to make the audio track of a segment of a television program, and transmitted

the program to [affiliated] TV stations, which in turn made their own copies for transmission to

the viewing public." *Id.* at 318. Writing for a unanimous panel, Judge Newman explained that

"distribution is generally thought to require the transmission of a 'material object' in which the

sound recording is fixed: a work that is of 'more than transitory duration.'" *Id.* at 325.

Emphasizing the "distinction between material and non-material embodiments," the court

concluded that Paramount's transmission did not infringe the distribution right. *Id.* at 326.

---

[16] To the extent this issue has been squarely raised in other cases involving P2P file sharing by individuals, courts have generally declined to rule on the question, deferring it to later proceedings. *See, e.g., Arista Records LLC v. Greubel,* 453 F.Supp.2d 961, 968 (N.D. Tex. 2006).

The Second Circuit specifically left for another day the question of whether "disseminations must always be in physical form to constitute 'distributions.'" *Id.* at 325. Plaintiffs' distribution claim in this case, however, squarely poses that question. Just as in *Agee v. Paramount*, the defendant here is accused of having made unauthorized copies of sound recordings and of electronically transmitting those sound recordings to others, who, thanks to the transmissions, make their own copies. From a copyright standpoint, it is irrelevant that Paramount used satellite communications technology to transmit the sound recordings, whereas the accused Defendant here is alleged to have used the Internet. *See* Reese, *The Public Display Right*, at 131 ("If liability for violation of the distribution right turns merely on a user's ability to make a new copy of transmitted material, then any transmitter could be violating the distribution right merely by engaging in transmissions of displays."). Both are electronic transmissions, and both enabled third parties to reproduce the sound recordings in question (in Paramount's case, affiliated television stations recorded the transmissions, while in this case, it would be other file-sharers). Accordingly, just as Paramount's transmissions of sound recordings could not constitute "distributions" within the meaning of § 106(3), Defendant's transmissions also cannot.

### 3.    Misreading § 106(3) to Encompass Transmissions Undermines Other Provisions of the Copyright Act.

Recognizing the statute's express limits on the scope of § 106(3) does not leave copyright owners without recourse on the Internet. Copyright owners remain free to bring claims based on their rights of reproduction (as Plaintiffs have here) and public performance. Rulings that misconstrue the scope of § 106(3), however, have the potential to cause serious disruption in contexts far removed from peer-to-peer file sharing. The Copyright Act carefully distinguishes and describes each of the exclusive rights, subjecting each to a distinct and elaborate array of statutory exceptions, limitations and statutory licenses. Relying on those distinctions, private

21

parties, in turn, have arranged their affairs with reference to these statutory categories. Judicial rulings that blur the statutory lines in one context can thus disrupt settled expectations in others.

Fundamental to the edifice of copyright law has been a distinction between the reproduction and dissemination of material objects—activities regulated by the reproduction and distribution rights—and the transmission of works to the public—activity regulated by the rights of the public performance and display. *See* Reese, *The Public Display Right,* at 92-138. When one person "uploads" a file to another, the work is transmitted over the Internet such that the recipient is left with a complete copy of the transmitted work at the end of the transmission. *See id.* at 130. While it may be tempting to describe this set of events as a "distribution," it is important to recall that § 106(3) does not encompass all acts of distribution, but is instead statutorily cabined to the exchange of material objects. Instead, from the perspective of § 106 of the Copyright Act, P2P file sharing principally implicates the right of reproduction (and potentially public performance), rather than distribution. *See* Reese, *The Public Display Right,* at 129-30.

The distinction is not a mere exercise in formalism. An increasing number of activities in the digital age involve "transmit and reproduce" functions; blurring the distinction between reproduction and distribution could dramatically affect the emergence of new communications services. This is vividly illustrated by the recent lawsuit filed by several of the Plaintiffs against satellite broadcaster XM Radio, mentioned above. *See Atlantic Recording Corp. v. XM Satellite Radio*, 2007 WL 136186 at *1. As a broadcaster, XM transmits music to millions of subscribers. When satellite radio broadcasters (like XM and Sirius) transmit music to subscribers, they rely on a statutory license that applies only to the public performance right in sound recordings. *See* 17 U.S.C. § 114(d)(2). Those same satellite radio broadcasters, however, also sell devices that

22

enable their subscribers to record transmitted music for later playback. *See* Walter S. Mossberg & Katherine Boehret, *A Portable Player For Both Satellite Radio, MP3s*, WALL ST. J. (May 17, 2006). In the lawsuit against XM, the plaintiffs contend that because XM's broadcasts can be stored by subscribers for later playback, they constitute "distributions" under § 106 (3). *See Atlantic v. XM Satellite Radio*, 2007 WL 136186 at *1. This expansive interpretation of the distribution right (the same one urged in the instant case) would effectively render the statutory license a dead letter, as satellite radio broadcasters would be forced to negotiate with copyright owners for distribution rights.[17]

Similarly, cable and satellite television broadcasters rely on a statutory license that permits them to transmit copyrighted programming to their subscribers. *See* 17 U.S.C. § 111, 122. Like the statutory licenses relied on by satellite radio broadcasters, however, the statutory license is limited to the public performance right and does not encompass § 106 (3). Yet millions of American cable subscribers routinely use VCRs and digital video recorders (DVRs)—often supplied by their cable or satellite TV provider—to turn those transmissions into "downloads." By injecting uncertainty about the applicability of the distribution right to these activities, Plaintiffs' reading of § 106(3) could undermine the settled expectations of this industry.

Finally, expanding the scope of § 106 (3) would also threaten to upset existing private contractual arrangements that are premised on the traditional division of distribution, reproduction, and performance rights. In light of these considerations, and Plaintiffs ability to

---

[17] Although the XM subscribers are making reproductions with these satellite radio recorders, those "time-shifted" copies are themselves subject to a statutory licensing regime, *see* 17 U.S.C. § 1008, and may also qualify as a fair use, *see Sony v. Universal City Studios,* 464 U.S. at 447-55.

bring of claims under their reproduction rights against those who use P2P file sharing software to infringe, there is no justification for warping the distribution right to reach the facts alleged here.

## CONCLUSION

For the foregoing reasons, EFF respectfully asks the Court to grant Defendant's motion to quash the subpoena to Boston University.

ELECTRONIC FRONTIER FOUNDATION

By its attorneys,

Dated: February 7, 2008                    /s/ Emily A. Berger

Emily A. Berger, BBO No. 650,841
Emily@eff.org

Fred von Lohmann, Esq.
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell St.
San Francisco, CA 94110
(415) 436-9333
(415) 436-9993 (fax)

**NOTICE OF ELECTRONIC FILING**

The undersigned hereby certifies that this document was electronically filed on Feb. 7, 2008, and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.


/s/ Emily A. Berger