UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARISTA RECORDS LLC, a Delaware limited liability company; WARNER BROS. RECORDS INC., a Delaware corporation; ATLANTIC RECORDING CORPORATION, a Delaware corporation; VIRGIN RECORDS AMERICA, INC., a California corporation; UMG RECORDINGS, INC., a Delaware corporation; BMG MUSIC, a New York general partnership; CAPITOL RECORDS, INC., a Delaware corporation; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; MOTOWN RECORD COMPANY, L.P., a California limited partnership; MAVERICK RECORDING COMPANY, a California joint venture; ELEKTRA ENTERTAINMENT GROUP INC., a Delaware corporation; LAFACE RECORDS LLC, a Delaware limited liability company; and INTERSCOPE RECORDS, a California general partnership, <br><br> Plaintiffs, <br><br> v. <br><br> DOES 1 - 21, <br><br> Defendants. | CIVIL ACTION No. 04-cv-12434-NG (CONSOLIDATED DOCKET NO.) <br><br> CIVIL ACTION No. 07-cv-10834-NG (ORIGINAL DOCKET NO.) |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO AMICUS CURIAE BRIEF OF THE ELECTRONIC FRONTIER FOUNDATION IN SUPPORT OF DEFENDANT JOHN DOE'S MOTION TO QUASH SUBPOENA

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.    The First Amendment Arguments Raised By EFF Were Not Raised By Any Of The Parties In This Case And Should Not Be Considered By The Court. ................... 2

II.    The First Amendment Does Not Protect Copyright Infringement, And Plaintiffs Have Substantial Evidence Of Defendant's Infringement In This Case. ........................................................................................................................ 3

III.    Defendant Distributed Plaintiffs' Copyrighted Sound Recordings In Violation Of The Copyright Act. ............................................................................................... 5

    A.    Defendant Distributed Plaintiffs' Copyrighted Sound Recordings To Plaintiffs' Investigator In Violation Of The Copyright Act. .................................. 5

    B.    Defendant Also Distributed Plaintiffs' Sound Recordings By Making Them Available To Others On A Peer-To-Peer File-Sharing Network. ................ 6

        1.    Case Law Unanimously Supports Plaintiffs' Position, Not EFF's ............................................................................................. 7

        2.    The Plain Language Of The Copyright Act Also Supports Plaintiffs' Position That Making Copyrighted Sound Recordings Available For Electronic Distribution On A Peer-To-Peer Network Without Authorization Violates The Exclusive Right Of Distribution. .................... 11

        3.    Applying Existing Law As Set Forth In The Copyright Act And In Case Law Will Not Have Any Disruptive Consequences As EFF Contentds. .............................................................................................. 16

    C.    The Language Of The Copyright Act Subsumes The Unauthorized Distribution of Electronic Files Over P2P Networks. ......................................... 18

CONCLUSION ................................................................................................................... 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
    263 F.3d 239 (3rd Cir. 2001), <u>cert. denied</u>, 534 U.S. 1081 (2002)....................................2

*A&M Records, Inc. v. Napster*,
    239 F.3d 1004 (9th Cir. 2001) ........................................................................................8

*Agee v. Paramount Committees, Inc.*,
    59 F.3d 317 (2nd Cir. 1995)...................................................................................14, 17

*Arista Records, LLC v. Greubel*,
    453 F. Supp. 2d 961 (N.D. Tex. 2006) ..........................................................................9

*Atlantic Recording Corp. v. Howell*,
    2007 WL. 2409549 (D. Ariz. Aug. 20, 2007)................................................................10

*Bano v. Union Carbide Corp.*,
    273 F.3d 120 (2nd Cir. 2001)..........................................................................................2

*Batjac Productions Inc. v. GoodTimes Home Video Corp.*,
    160 F.3d 1223 (9th Cir. 1998) ......................................................................................16

*Columbia Insurance Co. v. Seescandy*,
    185 F.R.D. 573 (N.D. Cal. 1999)....................................................................................4

*Eldred v. Ashcroft*,
    255 F.3d 849 (D.C. Cir. 2001) ........................................................................................2

*Expediters Internat'l v. Direct Line Cargo*,
    955 F. Supp. 468 (D.N.J. 1998) ....................................................................................12

*General Engineering Corp. v. Virgin Islands Water & Power Authority*,
    805 F.2d 88 (3rd Cir. 1986) ................................................................................2, 16, 18

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985)...................................................................................................3, 13

*Highfields Capital Management L.P. v. Doe*,
    385 F. Supp. 2d 969 (N.D. Cal. 2005) ...........................................................................4

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*,
    118 F.3d 199 (4th Cir. 1997) ..........................................................................................7

*Latin American Music Co. v. Archdiocese of San Juan*,
    499 F.3d 32 (1st Cir. 2007)......................................................................................11, 12

#1309969 v5

*MAI Systems Corp. v. Peak Computer, Inc.*,
  991 F.2d 511 (9th Cir. 1993), cert. dismissed, 510 U.S. 1033 (1994)..............................20

*Metropolitan-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*,
  545 U.S. 913 (2005).........................................................................................1

*Motown Record Co. v. DePietro*,
  2007 U.S. Dist. LEXIS 11626 (E.D. Pa. Feb. 16, 2007) ...................................9

*NFL v. Primtime 24 Joint Venture*,
  1999 U.S. Dist. LEXIS 3592 (S.D.N.Y. March 23, 1999) ...............................12

*N.Y. Times Co. v. Tasini*,
  533 U.S. 483 (2001)........................................................................................18

*Olan Mills, Inc. v. Linn Photo*,
  23 F.3d 1345 (8th Cir. 1994) ........................................................................5, 6

*Perfect 10 v. Google Inc.*,
  508 F.3d 1146 (9th Cir. 2007) .........................................................8, 9, 17, 18

*RCA/Ariola International Inc. v. Thomas & Grayston Co.*,
  845 F.2d 773 (8th Cir. 1988) .............................................................................6

*RCA Records v. All-Fast System Inc.*,
  594 F. Supp. 335 (S.D.N.Y. 1984) ....................................................................6

*Resnick v. Copyright Clearance Center, Inc.*,
  422 F. Supp. 2d 252 (D. Mass. 2006) .............................................................12

*Silvers v. Sony Pictures Entertainment, Inc.*,
  402 F.3d 881 (9th Cir. 2005) ..........................................................................13

*Sony Music Entertainment, Inc. v. Does 1-40*,
  326 F. Supp. 2d 556 (S.D.N.Y. 2004)............................................................3, 4

*Sony Pictures Home Entertainment, Inc. v. Lott*,
  471 F. Supp. 2d 716 (N.D. Tex. 2007) ..............................................................9

*Stenograph L.L.C. v. Bossard Associates, Inc.*,
  144 F.3d 96 (D.C. Cir. 1998)..........................................................................20

*United States v. Schaffer*,
  472 F.3d 1219 (10th Cir. 2007) .................................................................10, 11

*Universal City Studios Products LLLP, v. Bigwood*,
  441 F. Supp. 2d 185 (D. Me. 2006) ...................................................................9

*Venegas-Hernandez v. Asociacion De Compositores y Editores De Musica Latino Americana,*
424 F.3d 50 (1st Cir. 2005) ....................................................................................11, 12

*In re Verizon Internet Services, Inc.,*
240 F. Supp. 2d 24 (D.D.C.), <u>rev'd on other grounds</u>, 351 F.3d 1229 (D.C.C. 2003), <u>cert. denied</u>, 543 U.S. 924 (2004) ..................................................................2

*Wahpeton Canvas Co. v. Bremer,*
893 F. Supp. 863 (N.D. Iowa 1995) ..................................................................6

## STATE CASES

*Dendrite International, Inc. v. Doe No. 3,*
775 A.2d 756 (N.J. App. 2001) ..........................................................................4

## DOCKETED CASES

*Arista Records LLC. v. Does 1-30,*
Civil Action No. 07-4647 (FLW) (D.N.J. Jan. 28, 2008) ...................................4

*Atlantic Recording Corp. v. XM Satellite Radio,*
No. 1:06-cv-03733-DAB (S.D.N.Y. May 16, 2006) ................................16, 17

*Capitol Records, Inc. v. Thomas,*
Case No. 06-CV-1497 (MJD/RLE) (D. Minn. 2006) ......................................10

*Elektra Entertainment Group, Inc. v. Barker,*
Case No. 05 CV 7340 (KMK) (S.D.N.Y. 2005) ..............................................20

## FEDERAL STATUTES

17 U.S.C. § 101 ...............................................................................................13

17 U.S.C. § 106(3) .............................................................................11, 17, 19

## OTHER AUTHORITY

Am. Jur. 2d <u>Amicus Curiae</u> § 6 ..........................................................................2

Final Report of the National Commission on New Technological Uses of Copyrighted Works, H.R. Rep. No. 1307, 96th Cong., 1st Sess., at 22, reprinted in 1980 U.S.C.C.A.N. 6460 (1980) ...............................................................................20

Keith Kupferschmid, <u>Lost in Space: The Digital Demise of the First-Sale Doctrine,</u>
16 J. Marshall J. Computer & Info. L. 825, 849-50 (Summer 1998) .........19, 20

#1309969 v5

Niels Schaumann, *Copyright Infringement and Peer-to-Peer Technology*,
28 Wm. Mitchell L. Rev. 1001, 1037 (2002).................................................................19

Statement of Bruce Lehman, PTO Commissioner, <u>WIPO Copyright Treaties
Implementation Act; and Online Copyright Liability Limitation Act, Hearing on
H.R. 2281 & H.R. 2180</u> ..............................................................................................14

v

**INTRODUCTION**

The Electronic Frontier Foundation ("EFF") has submitted a brief that repeats arguments that it has made in other cases and which have garnered no support in any other court to date.  At bottom, EFF seeks to insulate infringers from any enforcement so that EFF's other clients, the creators of peer-to-peer ("P2P") software, can continue to profit from infringement.[1]

EFF's brief makes three arguments.  First, EFF argues that, because of First Amendment protections, the applicable discovery standard should be higher than the traditional good cause standard.  EFF is wrong.  It is well established that the First Amendment does not protect the identities of copyright infringers, and Plaintiffs have provided substantial evidence of Defendant's infringement here.  As detailed in Plaintiffs' Complaint and in the Declaration of Carlos Linares, Plaintiffs have identified the date and time of Defendant's infringement, the IP address assigned to Defendant at the time of infringement, and a list of the copyrighted recordings that Defendant has, without the permission or consent of Plaintiffs, downloaded and/or distributed to the public.  (Compl., Doc. No. 1, at ¶¶ 20 and 25; Exhibit A to Compl.; Linares Decl., Exhibit A to Doc. No. 5, at ¶¶ 18-19).

Second, EFF argues that making copyrighted works available to others on a P2P network without permission from the copyright holder does not violate the copyright holder's exclusive right of distribution.  Both established case law, including the cases on which EFF relies, and the language of the Copyright Act, however, establish that making copyrighted sound recordings available for distribution on a P2P network without authorization from the copyright owner violates the copyright owner's exclusive right of distribution.  The United States Register of

---

[1]  EFF was and remains counsel for the respondent StreamCast Networks, Inc. in <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.</u>, 545 U.S. 913 (2005).  Thus, EFF represents one of the very entities responsible for creating the file-sharing networks that encourage the massive infringement of Plaintiffs' copyrights.

Copyrights has reached the same conclusion, and its interpretation of copyright law is entitled to judicial deference.

Finally, EFF argues that the unauthorized distribution of copyrighted works over the Internet does not violate the Copyright Act at all because, according to EFF, infringement requires proof of distribution of a "material object." EFF cannot cite a single case to support its position. In fact, all of the cases support Plaintiffs' position. The idea that an electronic distribution is somehow not a distribution is inconsistent with the language and purpose of the Copyright Act, and accepting EFF's erroneous argument would effectively immunize copyright infringement on the Internet from any liability whatsoever.

## ARGUMENT

### I.    THE FIRST AMENDMENT ARGUMENTS RAISED BY EFF WERE NOT RAISED BY ANY OF THE PARTIES IN THIS CASE AND SHOULD NOT BE CONSIDERED BY THE COURT.

It is well-settled that new issues raised by an amicus that were not raised by any of the parties are not properly before the Court. See Bano v. Union Carbide Corp., 273 F.3d 120, 127 n. 5 (2nd Cir. 2001); A.D. Bedell Wholesale Co. v. Philip Morris Inc., 263 F.3d 239, 266 (3rd Cir. 2001), cert. denied, 534 U.S. 1081 (2002); Eldred v. Ashcroft, 255 F.3d 849, 851 (D.C. Cir. 2001); General Engineering Corp. v. Virgin Islands Water & Power Authority, 805 F.2d 88, 92 n. 5 (3rd Cir. 1986) (collecting cases); In re Verizon Internet Services, Inc., 240 F. Supp. 2d 24, 42 (D.D.C.), rev'd on other grounds, 351 F.3d 1229 (D.C.C. 2003), cert. denied, 543 U.S. 924 (2004); 4 Am. Jur. 2d Amicus Curiae § 6 ("An amicus curiae is not a party and generally cannot assume the functions of a party, or an attorney for a party."), § 7 ("In general, an amicus curiae must accept the case before the court with the issues made by the parties. Accordingly, an amicus curiae ordinarily cannot inject new issues into a case which have not been presented by the parties.") (2004) (footnotes omitted).

2

Here, EFF seeks to have the Court rule that the First Amendment precludes discovery of the infringer's identity. This argument was not raised in any way by any party in this case, and is only now before the Court by virtue of EFF's amicus brief. Because it is improper for an amicus to introduce new issues that have not been raised by any party, this Court should not consider EFF's First Amendment arguments.

II.    **THE FIRST AMENDMENT DOES NOT PROTECT COPYRIGHT INFRINGEMENT, AND PLAINTIFFS HAVE SUBSTANTIAL EVIDENCE OF DEFENDANT'S INFRINGEMENT IN THIS CASE.**

Even if the Court were to consider EFF's First Amendment arguments, those arguments still fail. EFF argues that Plaintiffs have failed to satisfy the flexible good cause discovery standard and that Plaintiffs have failed to overcome Defendant's First Amendment privacy interests. (Doc. No. 152 at 8.) EFF is wrong on both issues.

As this Court has already found, Plaintiffs have met the good cause standard for expedited discovery. (See Order Re: Expedited Discovery, Doc. No. 6.) Indeed, Plaintiffs' showing of good cause is supported by substantial evidence of Defendant's infringement, including the date and time of Defendant's infringement, the IP address assigned to Defendant at the time of infringement, and a list of the copyrighted recordings that Defendant was distributing at the time Plaintiffs' investigators caught him doing so. (Compl., Doc. No. 1, at ¶¶ 20 and 25; Exhibit A to Compl.; Linares Decl., Exhibit A to Doc. No. 5, at ¶¶ 18-19.)

The First Amendment does not shield copyright infringement . See, e.g., Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 555-56 (1985). In Sony Music Entertainment, Inc. v. Does 1-40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), the Court rejected the arguments of Doe defendants who argued that they should remain anonymous because their P2P file-sharing activities were protected by the First Amendment. In its analysis, the Court noted that:

> In contrast to many cases involving First Amendment rights on the
> Internet, a person who engages in P2P file sharing is not engaging
> in true expression. . . .  Such an individual is not seeking to
> communicate a thought or convey an idea.  Instead, the
> individual's real purpose is to obtain music for free.

Id. at 564.

Even if there was any First Amendment protection, it was overcome by Plaintiffs' prima facie showing of injury, thereby justifying the disclosure of the identities of copyright infringers who used P2P networks.  Similarly, in Columbia Insurance Co. v. Seescandy, 185 F.R.D. 573, 580 (N.D. Cal. 1999), the Court found that the plaintiffs had made the showing required to state a claim of copyright infringement because the complaint was sufficient to survive a motion to dismiss.  See also Arista Records LLC. v. Does 1-30, Civil Action No. 07-4647 (FLW) (D.N.J. Jan. 28, 2008) ("defendant, who allegedly used one or more P2P networks to unlawfully download and disseminate the plaintiffs' copyrighted works has, at best, a minimal expectation of privacy in remaining anonymous and this expectation is clearly outweighed by Plaintiffs interests. . . .").

In contrast, all of the cases that EFF cites involve defamation claims.  For example, in Dendrite International, Inc. v. Doe No. 3, 775 A.2d 756, 760 (N.J. App. 2001), the Court addressed free speech concerns in the context of a defamation claim.  As EFF admits, Dendrite holds that the First Amendment may not be used to "shield copyright infringement."  (Doc. No. 152 at 7.)  Yet, that is precisely what EFF is seeking here.  Likewise, in Highfields Capital Management L.P. v. Doe, 385 F. Supp. 2d 969 (N.D. Cal. 2005), plaintiffs brought a defamation claim against anonymous posters to an on-line message board.  In this context, the Court allowed the posters to remain anonymous.  Highfields is irrelevant to EFF's First Amendment arguments because it involved free speech rights, and not claims of copyright infringement.

III.    **DEFENDANT DISTRIBUTED PLAINTIFFS' COPYRIGHTED SOUND RECORDINGS IN VIOLATION OF THE COPYRIGHT ACT.**

Recognizing that the substantial evidence of Defendant's infringement dooms its First Amendment argument, EFF claims that Defendant's actual distribution of specific sound recordings to Plaintiffs' investigator, MediaSentry, does not constitute infringement, that making copyrighted works available to others on a P2P network without permission from the copyright holder does not violate the copyright holder's exclusive right of distribution, and that the unauthorized distribution of copyrighted works over the Internet does not violate the Copyright Act at all because no "material object" has been distributed.  As explained below, none of EFF's arguments have any merit.

A.    **Defendant Distributed Plaintiffs' Copyrighted Sound Recordings To Plaintiffs' Investigator In Violation Of The Copyright Act.**

As discussed above, Plaintiffs' evidence shows that Defendant actually distributed the sound recordings listed in Exhibit A to the Complaint to Plaintiffs' investigator.  (Linares Decl., Exhibit A to Doc. No. 5, at ¶ 18).  In the face of this evidence, EFF contends that Defendant's distribution of these sound recordings to Plaintiffs' investigator somehow does not constitute infringement.  (Doc. No. 152, at 12 n. 8.)  EFF's contention has no merit.

The thrust of EFF's argument appears to be that, because Plaintiffs retained an investigator to assist them in stopping on-line piracy, Plaintiffs somehow authorized Defendant to distribute their copyrighted works to Plaintiffs' investigator.  This argument defies logic and has been expressly rejected by the courts.  For example, in Olan Mills, Inc. v. Linn Photo, 23 F.3d 1345 (8th Cir. 1994), a case cited by EFF, the Court held that, where the plaintiff copyright holder hired an investigator to investigate the defendant's infringement by asking the defendant to make copies of the plaintiff's works, the plaintiff "did not authorize the investigator to validate [the defendant's] unlawful conduct."  Id. at 1348.  Rather, retention of the investigator

5

was an attempt to stop such infringement, and "the copies made by [the defendant] at the request of the investigator were copyright violations." Id.

Similarly, in RCA/Ariola Int'l Inc. v. Thomas & Grayston Co., 845 F.2d 773 (8th Cir. 1988), the Court held that the plaintiff "had proved a clear case of direct infringement against the [defendant] retailers by showing that the plaintiff's investigators were permitted to make infringing copies" on cassette duplicating machines with the retailer's direct assistance. Id. at 777, 781; see also RCA Records v. All-Fast Sys. Inc., 594 F. Supp. 335, 338 (S.D.N.Y. 1984) (evidence that "defendant's employees willingly and knowingly copied copyrighted tapes for plaintiffs' investigators" established a likelihood of success on the plaintiffs' infringement claim); Wahpeton Canvas Co. v. Bremer, 893 F. Supp. 863, 871-72 (N.D. Iowa 1995) (holding, in the patent context, that the defendant's sale of parts to the plaintiff's investigator was not an authorized sale but rather was an infringing act).

For all of these reasons, there is no basis in law or fact for EFF's argument that Plaintiffs authorized Defendant to infringe their copyrights when they retained MediaSentry to assist them in combating on-line privacy.

**B.      Defendant Also Distributed Plaintiffs' Sound Recordings By Making Them Available To Others On A Peer-To-Peer File-Sharing Network.**

Plaintiffs demonstrated in their Motion and Supplement that making copyrighted sound recordings available for distribution to others on a P2P network without authorization from the copyright holder violates the copyright holder's distribution right. Plaintiffs' position is supported by (i) the language of the Copyright Act, (ii) the relevant legislative history, (iii) the opinion of the Register of Copyrights, and (iv) applicable case law.

Notwithstanding the foregoing, EFF argues that the Copyright Act requires proof of an actual dissemination of a copyrighted work to show a violation of the distribution right and that

6

acknowledging the making available right of distribution in section 106(3) will somehow have "disruptive consequences" in other contexts. The Court need not even consider EFF's "making available" argument because, as explained above, Plaintiffs have evidence that Defendant actually distributed a number of Plaintiffs' copyrighted sound recordings to Plaintiffs' investigator. In the event the Court does consider EFF's "making available" argument, the argument has no merit for the reasons explained in Plaintiffs' previous briefs and below.

### 1.    Case law unanimously supports Plaintiffs' position, not EFF's.

The cases set forth in Plaintiffs' Motion and Supplement support Plaintiffs' position that making copyrighted works available for distribution on a P2P network without authorization violates the distribution right in section 106(3). EFF's efforts to distinguish Plaintiffs' authority fails.

It has long been held that making a copyrighted work available for distribution to the public without authorization from the copyright holder violates the copyright holder's distribution right under section 106(3). Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199 (4th Cir. 1997). In Hotaling, the defendant library obtained unauthorized copies of the plaintiffs' work, added a listing of the copies to its index of available works, and made the copies available for the public to check out of its library. Id. at 203. Based on this evidence, the Fourth Circuit held that, even in the absence of proof that the work had actually been provided to the public, the work had been distributed within the meaning of section 106(3). Id. (holding that, when a "library adds a work to its collection, lists the work in its index or catalog system, and makes the work available to the borrowing or browsing public, it has completed all the steps necessary for distribution to the public").

This same analysis has been applied to the context of this case, where the user of a P2P file-sharing network adds a copyrighted work to his or her "shared" folder, lists the work in the

7

shared folder's index, and makes the work available to other users on the network.  Specifically, in <u>A&M Records, Inc. v. Napster</u>, 239 F.3d 1004 (9th Cir. 2001), the Ninth Circuit held that "users who upload file names to the search index for others to copy violate plaintiffs' distribution rights."  <u>Id</u>. at 1014.  EFF erroneously argues that this language is mere "obiter dicta."  In fact, however, this ruling was central to the Court's decision to uphold a preliminary injunction enjoining the defendant from engaging in or facilitating further unlawful distribution of the plaintiffs' works.  <u>Napster</u>, 239 F.3d at 1013 & n. 2.  Specifically, the plaintiffs in <u>Napster</u> had to prove underlying infringement to prove their claim of secondary liability against the defendant.  <u>Id</u>.  The plaintiffs did so with proof that Napster users made the sound recordings in their collections available to others on the P2P network, which is exactly what Defendant did here.  <u>See id</u>. at 1012, 1014.

The Ninth Circuit subsequently reaffirmed its Napster holding in <u>Perfect 10 v. Google Inc.</u>, 508 F.3d 1146 (9th Cir. 2007).  In <u>Perfect 10</u>, the Court held that providing links telling users of a search engine where to find the plaintiffs' copyrighted images did not alone infringe the plaintiff's distribution right.  <u>Id</u>. at 1162-63.  As part of its analysis, however, the Court reaffirmed the "deemed distribution rule" that formed the basis of its <u>Napster</u> decision. Specifically, the Court reiterated that "the distribution rights of the plaintiff copyright owners [in the Napster case] were infringed by Napster users (private individuals with collections of music files stored on their home computers) when they used the Napster software to make their collections available to all other Napster users."  <u>Id</u>.  <u>Perfect 10</u> held, however, that the "deemed distribution rule" did not apply to Google because, "[u]nlike the participants in the Napster system . . . Google does not own a collection of Perfect 10's full-size images and does not have a

collection of stored full-size images it makes available to the public." Id.  Thus, Google itself did not "distribute" the plaintiff's images as did the Napster users.  Id.

The facts of this case are analogous to those of Napster, not Perfect 10.  Defendant here made perfect digital copies of Plaintiffs' copyrighted sound recordings available for distribution from his shared folder, for free, to any other user on the network.  Thus, the deemed distribution rule applies here as it did in Napster.  See Perfect 10, 508 F.3d at 1162-63.

Similarly, in Sony Pictures Home Entm't, Inc. v. Lott, 471 F. Supp. 2d 716 (N.D. Tex. 2007), the Court addressed virtually the same evidence of distribution present here - the plaintiffs' works were made "available for download" from a specific Internet Protocol address for which the defendant was responsible.  Id. at 719.  Based on this evidence, the Court granted summary judgment to the plaintiffs, holding that "it is well-established that unauthorized downloading and uploading of copyrighted media files . . . is a violation of the copyright holders' exclusive rights to reproduce and distribute the files."  Id. at 722 (citing Napster, 239 F.3d at 1014).

Other courts have similarly adopted a favorable view of the reasoning set forth in Hotaling, describing it as a "seminal case."  Arista Records, LLC v. Greubel, 453 F. Supp. 2d 961, 969, 971 (N.D. Tex. 2006) (applying Hotaling and holding that the plaintiffs' allegations that the defendant "made the copyrighted recordings available to others without permission and actively reproduced and/or distributed the copyrighted recordings" stated a claim of copyright infringement); Universal City Studios Prods. LLLP, v. Bigwood, 441 F. Supp. 2d 185, 190-191 (D. Me. 2006) ("[B]y using KaZaA to make copies of the Motion Pictures available to thousands of people over the internet, Defendant violated Plaintiffs' exclusive [distribution] right."); Motown Record Co. v. DePietro, 2007 U.S. Dist. LEXIS 11626,

9

at *12 (E.D. Pa. Feb. 16, 2007) ("A plaintiff claiming infringement of the exclusive-distribution right can establish infringement by proof of actual distribution or by proof of offers to distribute, that is, proof that the defendant 'made available' the copyrighted work.") (attached hereto as Exhibit 1).[2]

On October 2-4, 2007, national counsel for Plaintiffs tried the case of <u>Capitol Records, Inc. v. Thomas</u>, Case No. 06-CV-1497 (MJD/RLE) (D. Minn.), which involved claims of copyright infringement that are virtually identical to the claims at issue in this case and resulted in a verdict for the record company plaintiffs totaling $222,000.00.  During the trial, an issue arose in the context of jury instructions as to whether it is a violation of the exclusive right of distribution for one to make sound recordings available on a P2P network, without proof of actual receipt of the sound recording by a third-party.  After hearing argument and reviewing the case law, the <u>Thomas</u> Court agreed with the record companies' position and instructed the jury as follows:

> The act of making copyrighted sound recordings available for electronic distribution on a peer-to-peer network, without license from the copyright owners, violates the copyright owners' exclusive right of distribution, regardless of whether actual distribution has been shown.[3]

Finally, in <u>United States v. Schaffer</u>, 472 F.3d 1219 (10th Cir. 2007), the Tenth Circuit was faced with a criminal statue that has no definition of the term "distribute."  472 F.3d at 1223. The Court looked at how the term has been applied in the copyright context and ruled that

---

[2]  The Court in <u>Atlantic Recording Corp. v. Howell</u>, 2007 WL 2409549 (D. Ariz. Aug. 20, 2007), reached the same conclusion.  The statement in EFF's brief (Doc. No. 152 at 14) that the Court vacated its ruling after receiving additional briefing regarding the "making available" theory is wrong.  Rather, the Court directed the parties to submit supplemental briefing primarily to address factual issues surrounding the defendant's alleged infringement.

[3]  This jury instruction is available on PACER in the <u>Thomas</u> case, Doc. No. 97, Jury Instruction No. 15.

10

making files available to others from a KaZaA shared folder constitutes distribution under the criminal code.  See id. at 1225 n. 7 (citing Grokster, 545 U.S. 913 (2005)).

The above authorities demonstrate that making sound recordings available for distribution on a P2P network, without authorization from the copyright holder, violates the copyright holder's exclusive right of distribution under section 106(3).

**2.      The plain language of the Copyright Act also supports Plaintiffs' position that making copyrighted sound recordings available for electronic distribution on a peer-to-peer network without authorization violates the exclusive right of distribution.**

Section 106(3) of the Copyright Act gives copyright owners "exclusive rights to do and to authorize" certain acts with respect to their copyrighted works, including the right "to distribute copies or phonorecords of the copyrighted work to the public."  17 U.S.C. § 106(3) (emphasis added).  This language shows that it is an actionable infringement for one to violate a copyright owner's exclusive right to "authorize" the distribution of copies or phonorecords of a copyrighted work.  Under the statute's plain language, the distribution right does not require a consummated transfer of the work.

In an effort to avoid the statute's plain language, EFF directs the Court's attention to three cases and argues, based on these cases, that the wrongful authorization of a distribution does not violate the distribution right.  The cases that EFF cites, however, support Plaintiffs' position.

EFF cites Latin American Music Co. v. Archdiocese of San Juan, 499 F.3d 32 (1st Cir. 2007) ("LAMCO") and Venegas-Hernandez v. Asociacion De Compositores y Editores De Musica Latino Americana, 424 F.3d 50 (1st Cir. 2005) to support its argument that the authorization of an infringing activity is insufficient to establish copyright infringement.  What EFF fails to point out is that Venegas-Hernandez specifically recognized that "the better bare-

11

language" reading of the Copyright Act would allow claims for direct infringement based on the authorization of an infringing act. <u>Venegas-Hernandez</u>, 424 F.3d at 58.

EFF also fails to point out that <u>LAMCO</u> considered only whether the listing of a copyrighted sound recording in a catalogue is, by itself, sufficient to establish infringement. <u>See</u> 499 F.3d at 46-47. After holding that such a listing, by itself, is not an infringing act, <u>LAMCO</u> noted that eight of the sound recordings were also "available" on the defendant's website. <u>Id</u>. at 47. The Court held that making the eight sound recordings available "might be infringing actions," and remanded the issue to the district court for proceedings on the issue. <u>Id</u>. Thus, <u>LAMCO</u> is entirely consistent with Plaintiffs' argument that the distribution right is violated where copyrighted sound recordings are not only listed in an index, but are also available behind the index. Plaintiffs here have shown far more than a mere listing of files in an index.

Finally, the Court in <u>Resnick v. Copyright Clearance Center, Inc.</u>, 422 F. Supp. 2d 252 (D. Mass. 2006), acknowledged that where, as here, there is direct proof of an infringing act such as distribution that occurs after the wrongful authorization, a direct cause of action may lie against the individual who authorized the act. <u>Id</u>. at 259; <u>see also</u> <u>NFL v. Primtime 24 Joint Venture</u>, 1999 U.S. Dist. LEXIS 3592 (S.D.N.Y. March 23, 1999) (recognizing a right of authorization); <u>Expediters Internat'l v. Direct Line Cargo</u>, 955 F. Supp. 468, 477 (D.N.J. 1998) (authorization of infringing acts abroad constitutes direct infringement, is actionable under the Copyright Act, is aligned with "our modern age of telefaxes, Internet communication, and electronic mail systems," and is "more closely aligned with the language, legislative history, and purpose of the statute").

Moreover, because Congress specifically noted that section 106(3) establishes the exclusive right of publication and gives the copyright owner control over the first public

12

distribution of an authorized copy of the work, the terms "distribution" and "publication" have been held to be synonymous in the Copyright Act.  See Harper & Row Publishers, 471 U.S. at 552.  The definition of the term "Publication" states that "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication."  17 U.S.C. § 101 (emphasis added).  Accordingly, the making available of a work - i.e., offering to distribute - falls within the exclusive right of distribution.

EFF's contention, based on a single treatise excerpt, that "publication" and "distribution" are not synonymous is directly at odds with the Supreme Court's decision in Harper & Row. 471 U.S. at 552.  Moreover, EFF's position is incompatible with settled rules of statutory construction.  The Copyright Act provides no definition of "distribution."  "[W]here a statute is ambiguous, courts should consult a statute's legislative history to discern Congressional intent." Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 896 (9th Cir. 2005).  Here, legislative history makes clear that section 106(3) establishes the exclusive right of publication, and the definition of "publication" encompasses "offer[s] to distribute."  Not surprisingly, to Plaintiffs' knowledge, no Court has adopted the excerpt cited by EFF.

Additionally, the United States' ratification of the so-called WIPO Digital Treaties demonstrates that § 106(3) includes an exclusive right of "making available."

Article 6 of the WIPO Copyright Treaty grants to copyright holders the exclusive right "of authorizing the making available to the public of the original and copies of their works through sale or other transfer of ownership."  This language expressly recognizes that an actual sale or transfer need not have taken place.  Rather, it is a violation of the exclusive right for

another to authorize the making available of a copyrighted work through sale or other transfer of ownership.

Similarly, Article 8 of the WIPO Copyright Treaty provides an exclusive right of "authorizing any communication to the public of [copyrighted] works, by wire or wireless means, including the making available to the public of [those] works" in such a way that members of the public may access these works from a place and at a time individually chosen by them. On its face, this language subsumes the distribution right, because, as here, the recipient is not limited to a public performance or display at a single time, but rather obtains the work to enjoy at any and all times. See Agee v. Paramount Comms., Inc., 59 F.3d 317, 325-26 (2nd Cir. 1995) (distinguishing the right of public performance from the right of distribution).

Accordingly, the right of "making available" is provided for on the face of the WIPO Digital Treaties. Upon ratification of these Treaties, the United States was required to take whatever steps were necessary to bring U.S. law into compliance with the Treaties' terms, including amending U.S. law as necessary to ensure compliance with the WIPO Digital Treaties. As such, the U.S. Department of Commerce transmitted to Congress the text of the Treaties. Congress then reviewed the Treaties and U.S. law in order to determine whether any changes to U.S. law were necessary to come into compliance with the Treaties. Significantly, both Congress and the Executive branch agreed that no such changes were necessary, having concluded that the existing distribution right of § 106(3) already included the "making available" right. Government witnesses and copyright experts from many agencies, including the Commerce Department (and PTO),[4] the State Department,[5] and the U.S. Copyright Office[6] all

---

[4] Statement of Bruce Lehman, PTO Commissioner, WIPO Copyright Treaties Implementation Act; and Online Copyright Liability Limitation Act, Hearing on H.R. 2281 &

14

concurred in this determination.  Thus, in a letter to Representative Howard L. Berman, the

Register of Copyrights, Marybeth Peters, stated, "As you are aware, in implementing the new

WIPO Copyright Treaty (WCT) and WIPO Performances and Phonograms Treaty (WPPT) in the

Digital Millennium Copyright Act, Congress determined that it was not necessary to add any

additional rights to Section 106 of the Copyright Act in order to implement the 'making

available' right under Article 8 of the WCT." Letter from Marybeth Peters to Rep. Berman, dated

Sept. 25, 2002.  Upon implementing the WIPO Digital Treaties, the House and Senate were in

unanimous agreement that the then-existing Copyright Act already protected the right of making

available.  For this reason as well, Defendant's claim that he is not liable for making copyrighted

sound recordings available through a P2P network is incorrect.

Finally, the opinion of the United States Copyright Office unequivocally supports

Plaintiffs' position that making sound recordings available on a P2P network constitutes a

distribution under section 106(3).  The Register of Copyrights has determined the following:

> While Section 106 of the U.S. Copyright Act does not specifically
> include anything called a "making available" right, the activities
> involved in making a work available are covered under the
> exclusive rights of reproduction, distribution, public display and/or
> public performance set out in Section 106.  Which of these rights

H.R. 2180 Before the House Subcommittee on Courts and Intellectual Property of the Committee
on the Judiciary, 105th Cong. 87 (1997).

[5] Testimony of Alan P. Larson, Assistant Secretary of State, WIPO Copyright Treaty
(WCT) (1996) and WIPO Performances and Phonograms Treaty (WPPT) (1996), Hearings
Before the Senate and the Committee on Foreign Relations. 105th Cong. (Sept. 10, 1998).

[6] On the subject of controlling access to a work, the Copyright Office concluded that
"[i]t has long been accepted in U.S. law that the copyright owner has the right to control access
to his work, and may choose not to make it available to others or to do so only on set terms."
Statement of Marybeth Peters, Register of Copyrights, WIPO Copyright Treaties Implementation
Act and Online Copyright Liability Limitation Act, hearing on H.R. 2281 & H.R. 2180 Before
the House Subcommittee on Courts and Intellectual Property of the Committee on the Judiciary,
105th Cong. 43 (1997).

15

> are invoked in any given context will depend on the nature of the "making available" activity.
>
> In the case of a peer to peer network user uploading a copyrighted work onto his or her computer, making it available for other users of the peer to peer network to download, it is simply incorrect to suggest that the person performing the download is the only person legally responsible for infringement.  Making the work available in this context constitutes an infringement of the exclusive distribution right, as well of the reproduction right (where the work is uploaded without the authorization of the copyright holder).

Letter from Marybeth Peters to Rep. Berman (Exhibit 2.)

The Register of Copyrights "has the authority to interpret the copyright laws and [] its interpretations are entitled to judicial deference if reasonable."  Batjac Productions Inc. v. GoodTimes Home Video Corp., 160 F.3d 1223, 1230 (9th Cir. 1998).

> **3.** **Applying existing law as set forth in the Copyright Act and in case law will not have any disruptive consequences as EFF contends.**

Absent authority to support its position, EFF suggests that a "parade of horribles" would result were this Court to apply the statue as written.  This Court should reject EFF's hollow plea.

First, arguments based upon public policy have not been proffered by either party and have not been invited by the Court.  Accordingly, as an amicus, EFF cannot now raise these arguments for the first time.  See General Eng'g Corp., 805 F.2d at 92.

Second, EFF's contention that applying the deemed distribution rule set forth in the Ninth Circuit's Napster and Perfect 10 decisions would mean that broadcasters might be vulnerable to massive infringement liability because of a purported blurred distinction between "making available" and public performance is without any factual or legal basis.  To begin with, the law with respect to "making available" is not novel and, if applied by the Court in this case, would not broaden the reach of existing copyright law.  Moreover, EFF cannot cite a single instance of the type of improper claims it professes to fear.  In Atlantic Recording Corp. v. XM Satellite

16

Radio, No. 1:06-cv-03733-DAB (S.D.N.Y. filed May 16, 2006), one of the cases cited by EFF, the plaintiffs alleged a violation of their exclusive rights to distribute and reproduce sound recordings where the defendant allegedly launched a service that distributes copies of the copyrighted sound recordings to subscribers to store and replay for an indefinite period of time, despite having a license to only stream the recording. See id. Nothing in the plaintiffs' complaint alleged infringement by public performance based on any making available theory. Id. In addition, the Court clearly understood and maintained the distinction between the two.

Third, the remaining cases cited by EFF only serve to expose the unreasonableness of its professed concern. In Agee, 59 F.3d at 323, for example, the Second Circuit explicitly rejected the type of claim EFF warns against. Id. (holding that a broadcaster does not wrongfully distribute a sound recording by merely transmitting that recording to the public). The Court in Perfect 10 also recognized the clear line that EFF warns will be blurred. See Perfect 10, 508 F.3d at 1162-63.

Finally, Plaintiffs here allege that Defendant violated their distribution right both through actual distribution and through deemed distribution under Perfect 10. Plaintiffs do not allege any public display or performance or make any claim that could possibly blur the distinction between distribution and public display or performance. Moreover, the public display right does not extend to sound recordings, and the public performance right in sound recordings is limited. See 17 U.S.C. § 106(5)-(6). For all of these reasons, EFF's purported concern for licensees of public display and public performance rights is a red herring.

17

C.    **The Language of the Copyright Act Subsumes the Unauthorized Distribution of Electronic Files Over P2P Networks.**

In a last ditch effort to make its case, EFF argues that no distribution of copyrighted works over the Internet violates the Copyright Act, because, according to EFF, infringement requires proof of distribution of a "material object."  (Doc. No. 152 at 15.)  This argument fails for many reasons.

First, the Court should not consider EFF's argument because neither party raised this issue previously.  See General Eng'g Corp. v. Virgin Islands Water and Power Auth. Caribbean Energy Co., Inc., 805 F.2d 88, 92 (3rd Cir. 1986).

Second, EFF cannot cite a single case to support its position that distributing an electronic work without authorization is not an infringement.  Indeed, EFF cites numerous cases that directly refute EFF's argument.  (See Doc. No. 152 at 18-19, citing multiple cases holding that unauthorized distributions over computer networks infringe copyrights.)  Indeed, the Ninth Circuit specifically determined in Perfect 10 that, "in the electronic context, copies may be distributed electronically."  Perfect 10, 508 F.3d at 1162-63 (9th Cir. 2007) (citing N.Y. Times Co. v. Tasini, 533 U.S. 483, 498 (2001)).

Third, as discussed above, section 106(3) grants to a copyright owner the exclusive right to distribute copies or phonorecords of a copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  As such, the Copyright Act grants a copyright holder, among other rights, the exclusive right to transfer, but it does not require that such transfer involve the movement of any particular material object from one computer to another.  Rather, the Act requires only that a material object embodying a copyright owner's work be delivered into someone else's hands or computer hard drive, as the case may be.  In other words, the statute requires only that, at the end of the transaction, a work is transferred from one

18

location to another, not that a material object has been transferred. This distinguishes the distribution right from the public display and performance rights set forth elsewhere in § 106. See Keith Kupferschmid, Lost in Space: The Digital Demise of the First-Sale Doctrine, 16 J. Marshall J. Computer & Info. L. 825, 849-50 (Summer 1998) (hereinafter "Kupferschmid"); accord Niels Schaumann, Copyright Infringement and Peer-to-Peer Technology, 28 Wm. Mitchell L. Rev. 1001, 1037 (2002) (hereafter "Schaumann") (as long as the recipient of the work being transmitted has a material object embedded with the work after a transfer has taken place, a distribution has occurred).

To argue that a distribution must involve the transfer of tangible objects simply ignores the reality of electronic transmissions, which, when they result in identifiable fixations on a recipient's computer, are the functional equivalent of receiving a tangible copy. Arguing that such a transmission does not amount to a distribution needlessly, and inconsistent with the Copyright Act, anchors the concept to distribution to the long ago past, when the only way copies could be distributed was through the dissemination of tangible objects. See Schaumann, at 1037. Accepting EFF's erroneous argument would effectively immunize all copyright infringement on the Internet from any liability whatsoever.

This analysis is fully consistent with the well-established view that the unlawful downloading of a copyrighted work to one's computer violates the exclusive right of reproduction set forth in 17 U.S.C. § 106(1). EFF apparently concedes, as it must, that an MP3 file residing on a downloader's computer constitutes a copy or phonorecord and, thus, by definition, is a "material object" under § 101 of the Copyright Act. Indeed, EFF fails to advise this Court that EFF itself has previously published an article directly stating that the very type of electronic transmission at issue violates the right of distribution: "[T]he transmission of a file

19

from one person to another results in a reproduction, a <u>distribution</u>, and possibly a public performance . . . ."  <u>See</u> Fred von Lohmann, <u>Peer-to-Peer File Sharing and Copyright Law After Napster</u>, <http://www.mp3offshore.com\copyrightlaw.html>   (Jan. 2003) (hereafter "von Lohmann") <u>see also</u> <u>Stenograph L.L.C. v. Bossard Associates, Inc.</u>, 144 F.3d 96, 101-02 (D.C. Cir. 1998) (reproduction of program in random access memory creates a "copy"); <u>MAI Systems Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511, 518 (9th Cir. 1993), <u>cert. dismissed,</u> 510 U.S. 1033 (1994) (same); Final Report of the National Commission on New Technological Uses of Copyrighted Works, H.R. Rep. No. 1307, 96th Cong., 1st Sess., at 22, reprinted in 1980 U.S.C.C.A.N. 6460 (1980) ("Because works in computer storage may be repeatedly reproduced, they are fixed and, therefore, are copies."); <u>Kupferschmid</u>, at 842-43.  For the same reasons that an MP3 file residing on a downloader's computer is a copy of a phonorecord for purposes of the Act, the unauthorized transmittal of such a file over P2P networks satisfies the requirements of distribution under the Act.

Finally, EFF's position has been rejected by the Department of Justice ("DOJ"), which filed an amicus brief in <u>Elektra Entertainment Group, Inc. v. Barker</u>, Case No. 05 CV7340 (KMK) (THK) (S.D.N.Y. 2005).

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Motion and Supplement, Plaintiffs request entry of an order denying Defendant's motion to quash subpoena and rejecting EFF's unsupported arguments.

Respectfully submitted,

ARISTA RECORDS LLC; WARNER BROS.
RECORDS INC.; ATLANTIC RECORDING
CORPORATION; VIRGIN RECORDS
AMERICA, INC.; UMG RECORDINGS, INC.;
BMG MUSIC; CAPITOL RECORDS, INC.;
SONY BMG MUSIC ENTERTAINMENT;
MOTOWN RECORD COMPANY, L.P.;
MAVERICK RECORDING COMPANY;
ELEKTRA ENTERTAINMENT GROUP INC.;
LAFACE RECORDS LLC; and INTERSCOPE
RECORDS

By their attorneys,

Dated: February 19, 2008          By:    /s/ Katheryn Coggan
                                         Katheryn Coggan
                                         HOLME, ROBERTS & OWEN LLP
                                         1700 Lincoln Street
                                         Denver, CO  80203-4541
                                         Main Phone:  (303) 861-7000
                                         Main Fax:  (303) 866-5999-0200
                                         *Admitted Pro Hac Vice*

                                         John R. Bauer, BBO# 630742
                                         Nancy M. Cremins, BBO # 658932
                                         ROBINSON & COLE LLP
                                         One Boston Place
                                         Boston, MA  02108-4404
                                         Main Phone:  (617) 557-5900
                                         Main Fax:  (617) 557-5999

21

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Local Rule 5.2(b), I, Nancy M. Cremins, hereby certify that this document filed through the ECF system on February 19, 2008 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Nancy M. Cremins

Nancy M. Cremins

#1309969 v5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **MOTOWN RECORD CO., LP, et al.,** | : | |
| **Plaintiffs,** | : | |
| **v.** | : | **CIVIL NO. 04-CV-2246** |
| | : | |
| **THERESA DePIETRO,** | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION & ORDER

**RUFE, J.**[1]                                                                                        **February 16, 2007**

       This is one of many actions filed throughout the nation in which numerous record companies are seeking to protect their copyrighted sound recordings from illegal downloading and sharing over the Internet. Presently before the Court are the parties' Cross-Motions for Summary Judgment[2] and the oppositions thereto. After consideration of the parties' submissions and review of the relevant legal authorities, Defendant's Motion will be denied, and Plaintiffs' Motion will be dismissed without prejudice. The Court will, however, entertain a request for a hearing to make the necessary findings of fact and conclusions of law regarding Defendant's alleged destruction of integral evidence, before any further judgment is rendered.

## I. FACTUAL BACKGROUND

       Most of the underlying facts of this case are undisputed. On November 18, 2003, at

---

[1] By Order of the Court dated July 14, 2004 [Doc. # 4], this case was referred to the Honorable Cynthia M. Rufe for monitoring and coordination of pre-trial matters. Accordingly, Judge Rufe addresses the parties' instant pre-trial dispositive motions. The case remains, however, on the trial calendar of the Judge to whom it was originally assigned at the time of filing, the Honorable Eduardo C. Robreno.

[2] The Court is being generous by categorizing Defendant's Request for Summary Judgment [Doc. # 47] as a motion for summary judgment under Federal Rule of Civil Procedure 56(b), but will treat the request as a motion, nonetheless, as Defendant is proceeding *pro se* in this matter.

7:07 a.m., while investigating copyright infringement by users of peer-to-peer file-sharing programs ("P2P programs"), Plaintiffs discovered that substantial copyright infringement was occurring at Internet protocol address ("IP address") 216.15.109.54, through use of KaZaA.[3]  At that time, the user at that IP address was distributing 1203 music files, including 31 sound recordings whose copyrights are owned by the Plaintiffs and are at issue in this action.[4]  According to Plaintiffs, the user was detected using KaZaA to share copyrighted music files 32 times between November 5, 2003, and April 12, 2004.[5]  Each time, the user was notified by instant message that he or she "appeared to be infringing Plaintiffs' copyrights, that distributing or downloading copyrighted music on the internet without permission is illegal, and that by breaking the law the individual risked legal penalties."[6]

Plaintiffs ascertained that RCN Corporation ("RCN") was the Internet service provider ("ISP") for the computer with IP address 216.15.109.54 on the date at issue.[7]  Accordingly, they served a subpoena upon RCN requesting information related to that IP address.  In response to the subpoena, RCN identified Theresa DePietro, 1121 Folsom Avenue, Prospect Park, Pennsylvania,

---

[3]  KaZaA is a P2P program, which is used to distribute files from one user's computer to other users' computers through the Internet.  According to Plaintiffs, who have significant experience dealing with these programs, it is one of the most popular P2P programs used to illegally download and distribute copyrighted material.  Pls.' Mot. for Summ. J. [Doc. # 50] ¶ 5–6.

[4]  Id. ¶ 7; Dr. Doug Jacobson Aff. & Expert Rep. [Ex. # 9] at 6.  Citations to exhibits refer to the exhibits attached to Plaintiffs' Motion for Summary Judgment, unless noted otherwise.

[5]  Pls.' Mot. for Summ. J. ¶ 8; Thomas Carpenter Aff. [Ex. # 11] ¶ 24.

[6]  Pls.' Mot. for Summ. J. ¶ 8; see also Carpenter Aff. ¶ 24; Text of Instant Message [Ex. # 12].

[7]  Pls.' Mot. for Summ. J. ¶ 9; Jacobson Aff. & Expert Rep. at 6.

as the subscriber of record for that IP address on November 18, 2003, at 7:07 a.m.[8]

On April 8, 2004, after Defendant was identified as the alleged infringer, Plaintiffs sent her a letter explaining, among other things, that a "Doe" lawsuit had been filed against her and that she was about to be named as a defendant.[9]  That letter specifically explained the need to preserve evidence relating to the claims against Defendant.[10]  After Plaintiffs' settlement attempts with Defendant failed, they filed the instant action naming Theresa DiPietro as Defendant in May 2004, and served her in July 2004.  Defendant subsequently answered the Complaint in August 2004.[11]  Nonetheless, Defendant disposed of the computer allegedly used for the infringement by setting it out for trash collection in or around September 2004.[12]  Defendant also disposed of the cable modem allegedly used for the infringement by returning it to RCN sometime in September or October 2004.[13]

Defendant's refusal to cooperate with Plaintiffs has persisted throughout the discovery process.  Defendant initially refused to provide any written discovery to Plaintiffs.[14]  On at least two different occasions, Defendant refused to answer questions related to the case by asserting her Fifth Amendment privilege against self-incrimination, even though no criminal investigation or charges

---

[8]  Pls.' Mot. for Summ. J. ¶ 9; Jacobson Aff. & Expert Rep. at 6; Simona E. LaPadat Aff. [Ex. # 14] ¶ 4; RCN's Response to Subpoena [Ex. # 13], at 7.

[9]  Pls.' Mot. for Summ. J. ¶ 14.

[10]  Id. ¶ 15; Letter from Patricia H. Benson, Esq. to Theresa DePietro (Apr. 8, 2004).

[11]  Pls.' Mot. for Summ. J. ¶ 16.

[12]  Id. ¶ 17; Def.'s Resp. to Pls.' Third Set of Interrogs. [Ex. # 21], at Interrog. Nos. 14 & 15.

[13]  Pls.' Mot. for Summ. J. ¶ 17; DePietro Dep. [Ex. # 17] 110:16–112:24, Oct. 4, 2005; Def.'s Resp. to Pls.' Second Set of Reqs. for Produc. of Docs. & Things [Ex. # 22], at Interrog. No. 2.

[14]  See Pls.' Mot. to Compel Expert Discovery [Doc. # 38] at 2.

were pending against her.[15]  These refusals to cooperate forced Plaintiffs to seek Orders from this

Court compelling Plaintiff to provide written discovery and to be deposed.[16]  Thereafter, Plaintiff

was deposed a second time and submitted responses to previously issued interrogatories.  During

discovery, Defendant acknowledged that she was the only person who had access to her computer,[17]

that her live-in boyfriend was the only other person in her apartment for any extended period of

time,[18] and that she never used a wireless router or wireless service to connect to the Internet.[19]

     In support of Defendant's position that someone other than she downloaded the music

files at issue here, she submitted a report prepared by her purported expert, Joseph C. Magee, Jr., in

December 2005.  The first drafts of this report were contested by Plaintiffs for failure to comply with

Federal Rule of Civil Procedure 26(b)(2).[20]  Defendant has resubmitted a draft that she contends

complies with the Rule, though Defendants continue to question the validity of the report and the

conclusions offered within it.[21]

     On June 15, 2006, after discovery concluded, Defendant made a request for summary

---

[15]  DePietro Dep. [Ex. # 15] 26:10–31:6, May 4, 2005; Def.'s Resp. to Interrogs. [Ex. # 16], at 1 ("Defendant Theresa DePietro is exercising her Fifth Amendment right by refusing to answer Plaintiff's [sic] Interrogatories.").

[16]  Order Granting Mot. to Compel Expert Disc. [Doc. # 39], Feb. 9, 2006; Order Granting Mot. to Compel [Doc. # 30], Aug. 19, 2005; Order Granting Mot. to Compel [Doc. # 17], Apr. 1, 2005.

[17]  DePietro Dep. 135:19–135:24, Oct. 4, 2005.

[18]  DePietro Dep. 21:8–24, 22:22–25:1, May 4, 2005.  Defendant's boyfriend, Nazareno Fioravanti, claims that he does not know what a computer is and that Defendant never had a computer during the time he has known her.  Fioravanti Dep. [Ex. # 18] 19:14–15, 41:11–18, Aug. 2, 2005.

[19]  DePietro Dep. 131:17–132:1, Oct. 4, 2005.

[20]  Mot. to Strike Def.'s Expert Rep. & Preclude Def.'s Expert from Testifying [Doc. # 43].

[21]  See Pls.' Mot. for Summ. J. at 11–12.

judgment.[22]  Plaintiffs filed an opposition to Defendant's request on July 6, 2006.[23]  On June 22,

2006, Plaintiffs filed their Motion for Summary Judgment.[24]  In this Motion, Plaintiffs argued that,

even if summary judgment were deemed inappropriate, the Court should sanction Defendant by

entering default judgment against her for destroying integral evidence.[25]  Defendant filed a bare-

bones opposition to Plaintiffs' Motion on July 14, 2006.[26]  In that Response, Defendant claimed that

she never admitted that "she threw her computer away,"[27] despite the fact that she explicitly admitted

that fact in responses to interrogatories and requests for production of documents and things.[28]

While the Motion was under review, Plaintiffs sought leave of Court to file a late Reply brief to

Defendant's opposition, which was granted, and Plaintiffs filed their Reply on February 2, 2007.[29]

Without seeking leave of Court, Defendant filed a Sur-reply on February 15, 2007, in which she

repeats her denials of liability and vehemently denies discarding her computer after receiving any

letter from Plaintiffs or being named as Defendant in this action.[30]  The Cross-Motions for Summary

Judgment are now ready for review.

---

[22]  Def.'s Request for Summ. J. [Doc. # 47].  This submission is a one-paragraph, two-sentence demand for summary judgment without any statement of its basis or argument thereon.

[23]  Pls.' Resp. to Def.'s Mot. for Summ. J. [Doc. # 53].

[24]  Pls.' Mot. for Summ. J. [Doc. # 50].

[25]  Id. at 12–18.

[26]  Def.'s Request to Deny Pls.' Mot. for Summ. J. [Doc. # 54].

[27]  Id. at 2, ¶ 4.

[28]  Def.'s Resp. to Pls.' Third Set of Interrogs., at Interrog. Nos. 14 & 15; see Def.'s Resp. to Pls.' Second Set of Reqs. for Produc. of Docs. & Things, at Req. No. 1.

[29]  Pls.' Reply to Resp. to Mot. for Summ. J. [Doc. # 57].

[30]  Def.'s Sur-Reply [Doc. #58].

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Disposition upon motion for summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[31]  In this case, the Court is presented with cross-motions for summary judgment.  The mere existence of cross-motions does not necessarily dictate that one motion will be granted and the other denied, thereby disposing of the case.[32]  If issues of material fact exist, such that a reasonable jury could return a verdict for the non-moving party,[33] then summary judgment is not appropriate, and the case must be allowed to proceed to trial.[34]

### III.  DISCUSSION

#### A.  Applicable Copyright Law

Under the Copyright Act, the owner of a valid copyright on a sound recording, such as a song, has the exclusive right to, among other things, "reproduce the copyrighted work in copies or phonorecords" and "distribute copies or phonorecords of the copyrighted work to the public."[35]  Accordingly, in order to prevail on a cause of action for copyright infringement, a plaintiff must prove: (1) that he or she owns the copyrights in the sound recordings allegedly downloaded and/or

---

[31]  Fed. R. Civ. P. 56(c).

[32]  See Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968).

[33]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

[34]  Rains, 402 F.2d at 245.

[35]  17 U.S.C. §§ 106(1) & 106(3) (2000).

distributed by the defendant; and (2) that the defendant actually "copied" those sound recordings.[36] Under the Copyright Act, "[c]opying refers to the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106, including the right to distribute and reproduce copyrighted material."[37]  A plaintiff claiming infringement of the exclusive-distribution right can establish infringement by proof of actual distribution or by proof of offers to distribute, that is, proof that the defendant "made available" the copyrighted work.[38]

## B.  Defendant's Motion for Summary Judgment

Defendant's Request for Summary Judgment demands dismissal with prejudice because "Plaintiff's [sic] have no credible evidence that proves Defendant Theresa DePietro or Defendants [sic] computer to be the perpetrator of the alleged copyright infringement complaints outlined in this case."[39]  This one sentence constitutes the entire substance of the request.  Defendant does not provide the Court with any evidence, in the form of affidavits, depositions, or otherwise, supporting her claim.  Nor does she make any argument informing the Court of the rationale behind her bald assertion that there are no genuine issues of material fact.  It is well-established that "a party

---

[36]  See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002).

[37]  Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 207 (3d Cir. 2005).  In this case, Plaintiffs move for summary judgment only on the basis of Defendant's alleged infringement of their distribution rights, but reserve "all rights and claims as to Ms. DePietro's violations of their exclusive rights of reproduction as to the Sound Recordings."  Pls.' Mot. for Summ. J., at 8–9 n.1.

[38]  While neither the United States Supreme Court nor the Third Circuit Court of Appeals has confirmed a copyright holder's exclusive right to make the work available, the Court is convinced that 17 U.S.C. § 106 encompasses such a right based on its reading of the statute, the important decision in A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001), and the opinion offered by the Register of Copyrights, Marybeth Peters, in a letter related to Congressional hearings on piracy of intellectual property on peer-to-peer networks, Letter from Marybeth Peters, Register of Copyrights, to Rep. Howard L. Berman, Rep. from the 28th Dist. of Cal. (Sept. 25, 2002) ("[M]aking [a work] available for other users of [a] peer to peer network to download . . . constitutes an infringement of the exclusive distribution right, as well as the production right.").

[39]  Def.'s Req. for Summ. J. [Doc. #47], at 1.

seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[40]  While the Court acknowledges that it should construe *pro se* filings liberally in the interests of justice, no amount of liberality will render Defendant's Motion sufficient.  Because Defendant has wholly failed to meet her initial burden of informing the Court of the basis for her request and identifying the evidence supporting her position, her Motion will be denied.[41]

## C.  Plaintiffs' Motion for Summary Judgment

Plaintiffs argue that they are entitled to summary judgment because they indisputably own the copyrights on the 31 sound recordings at issue in this case, and Defendant has not offered any evidence to rebut their allegations that she infringed those copyrights by distributing the sound recordings through the P2P program, KaZaA.  At this stage of the litigation, however, the Court cannot agree.

It is clear and undisputed that Plaintiffs own now, and owned at the time of the alleged infringement, the copyrights on the 31 sound recordings at issue here.  There are, however, genuine issues of material fact concerning whether or not Defendant has been misidentified as the infringing user.  While a mere assertion of misidentification may not be sufficient to satisfy

---

[40]  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

[41]  Furthermore, even if Defendant had attempted to support her request with some argument and evidence, the Court would still deny the Motion.  Plaintiffs have provided the Court with more than ample evidentiary support for a reasonable jury to find in their favor, such as the evidence linking an IP address assigned to Defendant on November 18, 2003, to the alleged infringement that occurred on that same date.  That piece of evidence, in itself, is enough for Plaintiffs to survive Defendant's Motion for Summary Judgment.

Defendant's burden to establish the existence of a genuine issue of material fact,[42] Defendant has also supplied the Court with a report from her purported expert.  In this report, Defendant's expert offers several theories to explain that, even though Plaintiffs identified a user at Defendant's IP address as the infringer on November 18, 2003, it is possible that Defendant was not the infringing user.  At the summary-judgment stage, the Court must accept this report in the light most favorable to Defendant.  Doing so, in conjunction with Defendant's repeated denials that she downloaded or distributed the sound recordings at issue in this case,[43] creates a genuine issue of material fact.  If Defendant can offer proof at trial that she may not have been the user identified by Plaintiffs, a reasonable jury could find that she is not liable for infringement.

The above analysis is not, however, dispositive as to Plaintiffs' Motion.  Plaintiffs have been deprived of the opportunity to fully test, evaluate, and challenge the theories offered in Defendant's expert's report because the computer allegedly used in the infringement has not been made available to Plaintiffs for examination.  According to Plaintiffs, and also according to Defendant's own admission, Defendant is responsible for that deprivation because she discarded the computer in or around September 2004 by placing it "out for weekly trash pick up."[44]  It appears that this was done approximately five months after receiving the "Doe letter" informing her that she had been identified as an infringer and instructing her to preserve all related evidence, four months after

---

[42]  See Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (citing Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, AFL-CIO, 982 F.2d 884, 892 (3d Cir. 1992)).

[43]  See, e.g., Def.'s Sur-Reply, at 2–3.

[44]  Pls.' Mot. for Summ. J. ¶ 17; Def.'s Resp. to Pls.' Third Set of Interrogs., at Interrog. Nos. 14 & 15.  At the same time, Defendant claims that she was merely approximating when she discarded her computer.  She points to her deposition testimony in which she stated that she discarded the computer "around then," but "don't hold me on that exact month."  Def.'s Sur-Reply, at 4 (quoting DePietro Dep. [Ex. F. to Def.'s Sur-Reply] 97:1–2, Oct. 4, 2005).

-9-

the Complaint was filed in this case, two months after Defendant was served with the Complaint, and a month after Defendant filed her Answer to the Complaint.  Moreover, Defendant disposed of the cable modem in use at the time of the alleged infringement by returning it to her provider, RCN, sometime in September or October 2004.[45]  As Defendant's expert acknowledged at his deposition, if Plaintiffs had access to the computer and the modem, they could determine: (1) whether KaZaA had ever been downloaded to the computer;[46] (2) whether the MAC address of the computer and the modem matched the MAC address in RCN's logs;[47] (3) whether a virus or worm could be responsible for downloading music files to the computer without her knowledge;[48] and (4) whether Defendant had enabled the remote-desktop feature on her computer, which may have allowed a third party to access her computer remotely.[49]  With this information, Plaintiffs may be able to prevail at the summary-judgment stage.  Without it, there remain genuine issues of fact such that a reasonable jury could return a verdict in Defendant's favor.

In the face of these disputed facts, the Court does not believe that granting summary judgment is the appropriate remedy, even when the disputes exist only as a result of alleged spoliation.  The Court must first determine whether Defendant discarded the computer and modem

---

[45]  Pls.' Mot. for Summ. J. ¶ 17; DePietro Dep. 110:16–112:24, Oct. 4, 2005; Def.'s Resp. to Pls.' Second Set of Reqs. for Produc. of Docs. & Things, at Interrog. No. 2.

[46]  Magee Dep. [Ex. # 24] 11:24–12:15, May 22, 2006.

[47]  Id. 18:2–19:2.

[48]  Id. 42:7–43:16 ("Q: So let's assume this happened to the defendant's computer. If you had the computer and the hard drive you would have been able to determine it?  A: Absolutely, 100 percent.").

[49]  Id. 62:15–63:12 ("Q: If we still had her hard drive today, we would be able to determine whether this feature had been enabled? A: Yes.").

in bad faith and, if so, the appropriate sanction for such spoliation.[50]  The Court will make the appropriate findings of fact and conclusions of law, but only after an appropriate motion is filed, to which Defendant will have the opportunity to respond, and the parties have an opportunity to be heard in Court.  In the interim, the Court will dismiss Plaintiffs' Motion without prejudice.  Plaintiffs will be permitted to renew their Motion at a later date, if appropriate.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be denied, and Plaintiffs' Motion for Summary Judgment will be dismissed without prejudice.  Upon appropriate motion, the Court will hold a hearing to consider the spoliation issue.

---

[50]  The sanctions generally available after a finding of spoliation include: (1) dismissal of a claim or granting judgment in favor of a prejudiced party; (2) suppression of evidence; (3) an adverse inference, known as the spoliation inference; (4) fines; and (5) attorneys' fees and costs.  Davis, 234 F.R.D. at 110–11.  A particular sanction is not mandated by any rule of law, but rather, the decision is left to the discretion of the Court.  Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **MOTOWN RECORD CO., LP, et al.,** | : | |
| **Plaintiffs,** | : | |
| v. | : | **CIVIL NO. 04-CV-2246** |
| | : | |
| **THERESA DePIETRO,** | : | |
| **Defendant.** | : | |

## ORDER

**AND NOW**, this 16th day of February 2007, upon consideration of Plaintiffs' Motion for Summary Judgment [Doc. # 50], Defendant's Response thereto [Doc. # 54], Plaintiffs' Reply [Doc. # 57], and Defendant's Sur-reply [Doc. # 58], it is hereby **ORDERED** that Plaintiffs' Motion is **DISMISSED** without prejudice, and a renewed motion may be filed at a later date, in accordance with the Court's Memorandum Opinion.

It is **FURTHER ORDERED** that, upon consideration of Defendant's Motion for Summary Judgment [Doc. # 47] and Plaintiffs' Response thereto [Doc. # 53], Defendant's Motion is **DENIED** without prejudice.

It is so **ORDERED**.

BY THE COURT:

/s/ Cynthia M. Rufe
**CYNTHIA M. RUFE, J.**

114



The Register of Copyrights
of the
United States of America

Library of Congress
Department 17
Washington, D.C. 20540

September 25, 2002

(202) 707-8350

RE:  Hearing on Piracy of Intellectual Property on Peer-to-Peer Networks

Dear Representative Berman:

In response to your request, I am responding to an assertion made in written testimony for tomorrow's Subcommittee hearing on "Piracy of Intellectual Property on Peer-to-Peer Networks" that U.S. copyright law does not give copyright owners a separate exclusive right of "making available."

This statement reflects an incorrect understanding of U.S. copyright law.  While Section 106 of the U.S. Copyright Act does not specifically include anything called a "making available" right, the activities involved in making a work available are covered under the exclusive rights of reproduction, distribution, public display and/or public performance set out in Section 106. (*See, e.g., New York Times Co., Inc. v. Tasini*, 533 U.S. 483 (2001), *Playboy Enters., Inc. v. Frena*, 839 F. Supp. 1552 (M.D. Fla. 1993), *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543 (N.D. Tex. 1997), *Marobie-FL, Inc. v. National Ass'n of Fire Equip. Distrib.*, 983 F. Supp. 1167 (N.D. Ill. 1997), *Religious Tech. Ctr. v. Netcom On-Line Communication Servs.*, 907 F. Supp. 1361 (N.D. Cal. 1995).) Which of these rights are invoked in any given context will depend on the nature of the "making available" activity.

In the case of a peer to peer network user uploading a copyrighted work onto his or her computer, making it available for other users of the peer to peer network to download, it is simply incorrect to suggest that the person performing the download is the only person legally responsible for infringement.  Making the work available in this context constitutes an infringement of the exclusive distribution right, as well of the reproduction right (where the work is uploaded without the authorization of the copyright holder).  In the Ninth Circuit's decision in *A&M Records v. Napster*, the court held that "Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights." (239 F.3d 1004, 1014 (9th Cir. 2001)).

As you are aware, in implementing the new WIPO Copyright Treaty (WCT) and WIPO Performances and Phonograms Treaty (WPPT) in the Digital Millennium Copyright Act, Congress determined that it was not necessary to add any additional rights to Section 106 of the Copyright Act in order to implement the "making available" right

115

The Honorable Howard L. Berman          2                    September 25, 2002

under Article 8 of the WCT.[1] Title I of the DMCA was intended to, and did, fully implement the WCT. As I stated in my testimony before the subcommittee, "In our view, [the bill] fully and adequately implements the obligations of the new WIPO treaties, without amending the law in areas where a change is not required for implementation." Since existing U.S. law already covered the activities encompassed in a making available right, "The treaties [did] not require any change in the substance of the copyright rights or exceptions in U.S. law." (H. Rep.105-551 at 15.)

Please let us know if you have any further questions or would like us to provide you with a more detailed analysis.

Sincerely,

Marybeth Peters / JF

Marybeth Peters
Register of Copyrights

The Honorable Howard L. Berman
Subcommittee on Courts, the Internet and Intellectual Property
B-351A Rayburn House Office Building
Washington, D.C. 20515

---

[1] Article 8 provides in pertinent part that:

"[A]uthors of literary and artistic works shall enjoy the exclusive right of authorizing any communication to the public of their works, by wire or wireless means, including the making available to the public of their works in such a way that members of the public may access these works from a place and at a time individually chosen by them." WCT, Article 8 (emphasis added.)