UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------x
                                                         )
ARISTA. RECORDS LLC, et al.,                             )
                                                         )
Plaintiffs,                                              ) Original Docket No.  1:08-cv-11080-NG
                                                         )    Lead Docket No. 1:04-cv-12434-NG
                                                         )
            -v.-                                         )
                                                         )
DOE-1,et_al                                              )
                                                         )
                        Defendants.                      )
                                                         )
---------------------------------------------------------x

### MEMORANDUM OF LAW OF BOSTON UNIVERSITY
### IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA

### PRELIMINARY STATEMENT

Doe 16, respectfully submits this memorandum of law in support of their

motion for an Order quashing the subpoena issued by this U.S. District Court on the ground that

the Order Re: Expedited Discovery dated July 2 2008 was issued by the Court based on a

flawed "Ex Parte Application for Leave to Take Immediate Discovery."

### ARGUMENT

### THE *EX PARTE* ORDER RE: EXPEDITED DISCOVERY SHOULD BE VACATED
### AND THE SUBPOENA SERVED ON NON-PARTY BOSTON UNIVERSITY SHOULD
### BE QUASHED BECAUSE THE EVIDENCE WAS ILLEGALLY OBTAINED, THE
### EVIDENCE WAS OBTAINED IN VIOLATION OF THE TERMS OF USE OF THE
### SOFTWARE USED TO COLLECT IT, AND BECAUSE THE SUBPOENA PLACES
### AN UNDUE BURDEN ON NON-PARTY BOSTON UNIVERSITY.

The subpoena served on Boston University seeks identification of certain individual users

of internet services provided by the university to its students, faculty, and other employees

on the grounds that the individual users of internet services infringed plaintiffsí copyrights by storing music files on their computers while connected to the internet without sufficient protection to prevent third parties from accessing those music files and copying them. The evidence used to justify the subpoena was obtained in violation of the terms of the End User License Agreement (EULA) of the software that was used to harvest the data by the plaintiff and/or their agents.

**Gnutella** (pronounced /nʊˈtɛlə/ with a silent g, or alternatively /gnʊˈtɛlə is the most popular file sharing network on the Internet with a market share of more than 40%.[1] In June 2005, Gnutella's population was 1.81 million computers.[2] The word "Gnutella" today refers not to any one project or piece of software, but to the open protocol used by the various clients. Since various parties are developing new clients, and the protocol will likely continue to evolve. The development of the Gnutella protocol is currently led by the GDF (Gnutella Developer Forum). Many protocol extensions have been and are being developed by the software vendors and free Gnutella developers of the GDF.

As all the currently available programs utilizing the Gnutella P2P protocol descend from the same original program, all are governed by the the GNU General Public License, which license governs their use and development. The Terms of Service establish the use, disclaimers, and limitations of liability governing the use of the Sites, the Services and the other BitTorrent services and applications. They include the following language:

> "[You may not] impersonate another person or entity, misrepresent your affiliation with a person or entity, including (without limitation) federal, state, or municipal government, or a political candidate; or create or use a false identity; collect, manually or through an automatic process, information about other users without their express consent."

---

[1] http://arstechnica.com/news.ars/post/20080421-study-bittorren-sees-big-growth-limewire-still-1-p2p-app.html

Study: BitTorrent sees big growth, LimeWire still #1 P2P app
By Eric Bangeman I Published: April 21, 2008 - 07:32PM CT

Last week, the Digital Music News Research Group released its quarterly P2P report. The for-pay report covers the fourth quarter of 2007, but a publicly available excerpt breaks down the data for the period between September 2006 and September 2007. The data consists of snapshots of P2P application and protocol use collected from over 1.66 million Windows PCs. Gnutella is still the top P2P network. LimeWire still rules the P2P world. It is by far the most popular single P2P application, appearing on 36.4 percent of the machines surveyed as of last September. LimeWire also accounts for the overwhelming majority of Gnutella use among the top 13 of the 152 applications found on PCs. Gnutella was the protocol of choice for 40.5 percent of the PCs at the end of the period covered by the survey.

[2] Slyck News - eDonkey2000 Nearly Double the Size of FastTrack

The user must agree to these terms prior to installing the software, visiting or logging on to the site, or utilizing any of the services. As the plaintiff and/or their agent[s] has directly violated the above terms, both misrepresenting their intent with respect to acquiring and utilizing the software, and by collecting user data without the express consent of the defendant, the evidence was obtained improperly, and therefore the evidence is inadmissible. Without said evidence, the Plaintiff's case cannot proceed so the subpoena should be quashed. Also, as the issuance of the Subpoena itself is based on information illegally obtained, the Subpoena should be quashed.

The evidence was illegally obtained. Media Sentry, the investigative agent for the plaintiff, was issued a cease and desist order by the Massachusetts State Police in January of 2008. On January 2, 2008, the Massachusetts State Police Certification Unit sent a letter to MediaSentry's corporate parent SafeNet informing the company that an investigation revealed that it is "advertising and operating a Private Detective company" and that review of state records indicates that the company is "not licensed to conduct investigations" in the state.[3] It was ordered to immediately cease all investigative activity in the state of Massachusetts.

Recently it has been discovered that as a part of a secret enterprise on behalf of The Plaintiffs, MediaSentry has for years conducted illegal, flawed and negligent investigations of many thousands of private United States citizens. These illegal investigations are then used as the sole basis for pursuit of tens of thousands of lawsuits throughout the US.

The legality of MediaSentry's actions has recently come under scrutiny in _Lava Records v. Rolando Amurao_, where the defendant has accused the RIAA's investigators of operating as a private investigator without a license. As is the case with the Boston University Doe, Amurao's attorney is asking that the evidence collected by MediaSentry be thrown out, which would undercut the RIAA's case. The RIAA

---

[3] MediaSentry Ignoring Mass.Cease-And-Desist Order
By Eric Bangeman
April 11, 2008 - 11:03AM CT
Http:www.pronetworks.org/index.php/content/post/media_sentry_ignoring_mass_cease_and_desist

has since filed a motion to dismiss the case with prejudice.

Other attacks on the seriously discredited RIAA"investigator" include one by the Oregon attorney general, counterclaims in Florida and Texas, a class action in Oregon, and a motion to exclude filed in White Plains, New York[4]

As the subpoena is based on evidence obtained in direct violation of a lawful cease and desist order, it should be quashed. As the character and veracity of the Persons presenting evidence on behalf of the Plaintiff is seriously flawed as shown by their illegal activities, such evidence cannot be admitted, and the Subpoena should be quashed. As said evidence was the sole basis for the Subpoena, the Subpoena is flawed and should be quashed.

The subpoena is unduly burdensome in that it would require Boston University to interview all four occupants of the dormitory where the alleged offense took place to determine which other persons were also present there at the time, and then to track those persons down and interview all of them to determine who was using the computer at the time of the alleged infraction. As it is the practgice of students in the dorm to leave computers plugged in an running, as well as to use any available computer in whatever room they happen to be in, and as the incident took place during the busy and highly festive St Patrick's day weekend, a time during which students are partying and mixing freely with other students and friends, moving from dorm room to dorm room; the probable number of individuals who came in contact with the computer is potentially quite high. This presents an unduly burdensome obligation on Boston University to produce such records, therefore the Subpoena must be Quashed.

The subpoena is unduly burdensome in that it would require Boston University to interview all the students in its Computer Science Department to determine how many of them were familiar with the simple techniques used to "spoof" or change IP Addresses and Media Access Control (MAC) Addresses associated with a particular computer in order to conceal online identity. An IP or Internet Protocol Address is dynamically assigned by a router. It would be different each time a student goes online. The Mac Address is transmitted by the computer to the router, verifying the clients authorization to utilize

---

[4] , Recording Industry vs The People.
Http://www.Recordingindustryvspeople.blogsoot

the Boston University Network. Normally a Mac Address does not change. However that doesn't mean that it can't change. The process is very simple, and once done, the router's records would reflect a different computer was accessing the network. The process is a staple of even first year computer science majors, and has the potential to completely camouflage the actual user and allow that person to evade detection. As the activity alleged is one with an intrinsic motivation imparted to the perpetrator to evade detection, it is highly likely that this occurred. Naming any potentially innocent student in connection with any IP Address listed without thoroughly investigating all the possible results would be unduly prejudicial to that student as it would leave them burdened with defending an expensive lawsuit requiring the proof of a negative against a plaintiff with vastly greater resources, and could leave Boston University open to civil liability in this matter. A review all of Boston University's network records to see if ever a Media Access Control (MAC) Address appeared in connection with two Internet Protocol (IP) Addresses, simultaneously presents an unduly burdensome task, therefore the Subpoena should be Quashed. Interviewing and collecting logs and records [supposing even that they exist still in an unaltered form] from those who had the wherewithal to accomplish this evasion presents an unduly burdensome task on Boston University, therefore the Subpoena should be Quashed.

.

The Plaintiff's entire premise for bringing this suit is the capricious and unproven assumption that a user of the Gnutella Peer to Peer network (which the court has already ruled has legitimate and proper uses) whose music folder is made accessible to others by virtue of using a P2P program, has 1) illegally downloaded the music it contains and 2) is actually "offering" that music to others, when in fact the default configuration of many the P2P programs is to make the user's music library automatically available, and the user may not even be aware of this availability. The purchase of copyrighted material incurs no duty on the purchaser to diligently assist in protecting the plaintiff's copyright interest, so while the outcome of this negligence is unfortunate, it is not an action for which relief can be sought in a court of law any more so than leaving a car unlocked and thus allowing someone to access and copy a CD would. Therefore the Subpoena should be Quashed.